STATE, RESPONDENT, v. LEHIGH VALLEY RAILROAD COM-
PANY ET AL., PROSECUTORS.

Argued June 6, 1917—Decided August 14, 1917.

1. A corporation aggregate may be held criminally for manslaughter.
2. An indictment in the statutory form charging a corporation aggregate with manslaughter will not be quashed for failure to specify whether voluntary or involuntary manslaughter is meant.

---

On motion to quash indictment.

Before Justices SWAYZE, BERGEN and BLACK.

For the motion, *Gilbert Collins* and *Lindley M. Garrison*.

For the state, *John F. Drewen, Jr.* (*Robert S. Hudspeth* on the brief).

The opinion of the court was delivered by

SWAYZE, J. It has long been settled in this state that a corporation aggregate may in a proper case be held criminally for acts of malfeasance as well as for non-feasance. *State* v. *Morris and Essex Railroad Co.,* 23 *N. J. L.* 360; *State* v. *Passaic County Agricultural Society,* 54 *Id.* 260. So well settled is the general rule that in the later cases it has not been even questioned. *State* v. *Erie Railroad Co.,* 83 *Id.* 231; 84 *Id.* 661; *State* v. *Lehigh Valley Railroad Co.,* 89 *Id.* 48; *ante p.* 340. Notwithstanding these decisions it is now argued that a corporation aggregate cannot be held criminally for manslaughter.

We need not consider whether the modification of the common law by our decisions is to be justified by logical argument; it is confessedly a departure at least from the broad language in which the earlier definitions were stated, and a departure made necessary by changed conditions if the criminal law was not to be set at naught in many cases by contriving that the criminal act should be in law the act of a corporation. The modern rule, as well as the reasons for it, were so well stated by Chief Justice Green, in the earliest case above cited, that his opinion may fairly be said to be the classical judicial deliverance on the subject. The Chief Justice recognized that there were certain crimes, for example, perjury, of which a corporation cannot in the nature of things be guilty; that there are other crimes, for example, treason and murder, for which the only punishment imposed by law cannot be inflicted upon a corporation; he added, however, without any specific illustration that a corporation could not be liable for any crime of which a corrupt intent or *malus animus* is an essential ingredient. We need not consider what crimes may be included under the last exception. It is enough to say that the case is an authority which we are not at liberty to question, and would not question if we might, for the proposition that a corporation aggregate may be held criminally for criminal acts of misfeasance or non-feasance unless there is something in the nature of the crime, the character of the punishment prescribed therefor, or the essential ingredients of the crime,

which makes it impossible for a corporation to be held. Involuntary manslaughter does not come within any of these exceptions. It may be the result of negligence merely and arise out of mere non-feasance. That a corporation may be guilty of negligence is now elementary; that it could be held criminally for non-feasance was settled by numerous precedents cited by the Chief Justice (at *pp.* 364, 365). We think of no reason why it should not be held for the criminal consequences of its negligence or its non-feasance. There is nothing in the punishment prescribed which makes it impossible to punish a corporation. Section 109 of the Crimes act prescribes in the alternative a fine of $1,000 or imprisonment not exceeding ten years, or both. Clearly, a corporation may be punished by way of fine. The punishment is prescribed only for persons, but by section 9 of the act relative to statutes the word "person" is declared to include bodies corporate (artificial persons) as well as individuals (natural persons), and the same provision in a somewhat different form appears in section 220 of the Crimes act.

It is argued that the essential ingredients of manslaughter make it impossible to hold a corporation therefor. The crime was a felony at common law and some of the old authorities define homicide as the killing of one human being by another human being; that manslaughter was a felony at common law is not to the point, since "the distinction between felonies and misdemeanors is not observed in our criminal code." *Jackson* v. *State,* 49 *N. J. L.* 252; *Brown* v. *State,* 62 *Id.* 666 (at *p.* 695). Although it may be necessary in applying some of the old legal rules to our jurisprudence, to regard certain crimes called by our statute misdemeanors, as the equivalent of felonies for the application of common law rules, that necessity is one of terminology only; otherwise, there is now in this state no essential distinction between the two grades of offence known to the common law. We are unable to attribute to the ancient classification of manslaughter as a felony, the force in our modern jurisprudence which counsel claim for it.

As to the definition of homicide cited by counsel, it is enough to say that authorities of equal eminence define it differently. Blackstone, for example, in the passage cited in the brief (4 *Bl. Com.* 188), defines felonious homicide as "the killing of a human creature, of any age or sex, without justification or excuse." He then adds by way of illustration: "This may be done either by killing one's self, or another man." Blackstone does not say that these are the only cases of felonious homicide; as far as his text goes, the case of involuntary manslaughter by a corporation aggregate is not excluded, and is within the words of his definition. But if we assume, as is probably the fact, that Blackstone did not have in mind the case of involuntary manslaughter by a corporation aggregate as a possible case of felonious homicide, nevertheless, his illustration of suicide as a felonious homicide shows that the definition relied upon (killing of one human being by another human being) is inaccurate. We need not italicize the word "another" to show the conflict.

We do not forget that voluntary manslaughter involves ingredients quite different from those involved in involuntary manslaughter. The indictment is in statutory form. Under the statute there is no difference between an indictment for voluntary, and an indictment for involuntary, manslaughter, and a defendant may be convicted of either. *State* v. *Thomas,* 65 *N. J. L.* 598. If his constitutional right to be informed of the nature and cause of the accusation were not sufficiently protected by the form of indictment prescribed by the statute, the obligation is not available to the present defendant, who has been furnished with a bill of particulars showing that the charge relied upon is that of involuntary manslaughter.

We have examined the authorities in other jurisdictions to which we were referred. The decision of *People* v. *Rochester Railway and Light Co.,* 195 *N. Y.* 102; 88 *N. E. Rep.* 22; reported with *note,* 16 *Ann. Cas.* 837, was based entirely upon the construction of the exact language of the penal code, which defined homicide as "the killing of one human being by the act, procurement or omission of another," and the court necessarily, we think, held that "another" meant "another

human being." But Judge Hiscock, now the eminent Chief Judge, who spoke for the court, was at some pains to show that there was nothing essentially incongruous in holding a corporation aggregate criminally liable for manslaughter. The case is a good illustration of the way in which the proper growth and development of the law can be prevented by the hard and fast language of a statute, and of the advantage of our own system by which the way is open for a court to do justice by the proper application of legal principles.

The case of *Commonwealth* v. *Illinois Central Railroad Co.,* 152 *Ky.* 320; 153 *S. W. Rep.* 459, rests on the inaccurate definition of homicide to which we have already referred.

The case of *Regina* v. *Great Western Laundry Co.,* 13 *Man.* 66, rests chiefly on the absence of precedent. We cannot avoid the feeling that the learned judge attributed too much importance to this lack. We think the true question is whether the indictment is in harmony with established legal principles, as we think it is; we are not troubled by the fact that the case is one of first impression in New Jersey.

It is urged that the indictment should at least be quashed as to all the defendants except the Lehigh Valley Railroad Company, since the bill of particulars is directed at that defendant only. An indictment otherwise valid cannot be vitiated by the bill of particulars, although some motion depending on the latter may properly be raised at the trial. Moreover, a motion to quash is addressed to our discretion. *State* v. *Pisaniello,* 88 *N. J. L.* 262. That discretion ought not to be exercised in a case like this where injustice may be done thereby to the state and where the refusal to exercise it deprives the defendants of no substantial rights, since the question can be raised at the trial.

The motion to quash is denied. Let the record be remitted to the Hudson Quarter Sessions for trial.