THE STATE OF OHIO, APPELLEE, *v.* ROBERTS, APPELLANT. ▮

[Cite as State v. Roberts (1976), 50 Ohio App. 2d 237.]

238

(No. 75-CA-22—Decided July 1, 1976.)

*Mr. W. Duncan Whitney,* for appellee.
*Mr. Anthony M. Heald,* for appellant.

DOWD, J. This is an appeal from a conviction and sentence for aggravated murder. The defendant was indicted for the August 16, 1975, shooting death of John Allen, a Columbus resident, along the east bank of the Scioto River in southern Delaware County.

The prosecution's case included the testimony of Patricia Epley, an eye witness to the shooting and the key prosecution witness. She had lived with the defendant

for three and one-half years. The defendant was the father of one of Patricia Epley's three children. She testified that the defendant, accompanied by the victim, Johnny Allen, returned to their apartment on the day of the shooting, a Saturday afternoon, and indicated a desire to go fishing. She volunteered to drive the defendant and Allen to the fishing site. While enroute, the defendant removed a hand gun from his clothing and informed Allen that he was going to kill him. After Epley pulled the vehicle off State Route 257, close to the Scioto River in southern Delaware County, the defendant marched Allen to the edge of the river and shot him twice, leaving him dead where he was later discovered the same day. Patricia Epley testified that she had been ordered by the defendant to accompany them after they departed from the car and thus she saw the shooting. The defendant and Epley then returned to the vehicle and drove back to Columbus, stopping on the return trip to pick up Epley's three children whom she boarded out during the week while she worked. The next day, Sunday, Epley visited her sister in Columbus and advised her of the shooting. Epley's sister contacted the Columbus Police. The Columbus Police went to the apartment of Epley and the defendant and after failing to get a response at the door of the apartment, began to tow Epley's car. At this point, Patricia Epley left the apartment and went to the parking lot where she advised the Columbus police officers of the killing. The officers returned to the apartment and apprehended the defendant. Epley testified that she had hidden the defendant's revolver before she went down to check with the police officers in the parking lot. She returned to the apartment and retrieved the twenty-five caliber revolver for the investigating officer. Additional testimony established that the defendant had purchased the revolver and it was this gun that was ballistically identified with a bullet fragment taken from the body of the victim and the twenty-five caliber casing found at the scene.

Epley testified that the defendant advised the victim, Allen, that he was going to kill him because Allen had failed to pay a note the defendant had guaranteed. The

prosecution introduced testimony establishing that the defendant had guaranteed the payment of a note due Household Finance on which Allen was the principal obligor.

The defendant denied the shooting, claiming he was alone in the apartment on Saturday afternoon. He admitted being with Allen earlier in the day but not at the apartment. However, another tenant in the apartment, Ida Farmer, testified that she had seen the defendant and Allen together at the apartment on the Saturday afternoon at issue, corroborating Epley's testimony and contradicting the defendant's claim.

We turn first to a consideration of the second assignment of error by which the defendant claims that the trial court erred in refusing to grant the defendant a transcript of the grand jury testimony of Patricia Epley.

The appellant first sought Patricia Epley's Grand Jury testimony by a pre-trial motion filed October 14, 1975, stating:

"Now comes the defendant through his counsel and moves the court for an order to require the prosecuting attorney to furnish to counsel for the defendant a transcript of the testimony of Patricia Epley before the Delaware County Grand Jury in the above entitled case."

On October 20, 1975, the day the trial commenced, the trial court ordered the court reporter of Delaware County to produce for examination by the court the transcript of the testimony of Patricia Epley taken before the Grand Jury of Delaware County, Ohio, on September 8, 1975, and deliver the same in a sealed envelope to the court.

The trial court did not rule on the defendant's pretrial motion until after the prosecutor concluded the direct examination of Patricia Epley. Then the trial court denied the motion during the following colloquy which took place outside the hearing of the jury:

"The Court: Let the record show that the defendant is present with his counsel. Mr. Shaw, did you have anything at this time?

"Mr. Shaw: No, Your Honor. I believe the witness, Patricia Ann Epley is ready for cross-examination.

"The Court: Mr. Wickham, I believe you have a mo-

tion here with respect to Grand Jury testimony.

"Mr. Wickham: Well, I did, yes, file a written motion to ask the Court to permit us to have the transcript of her Grand Jury Testimony, Patricia Epley's, in order to be able to determine whether that testimony varies from her testimony at the preliminary hearing in the Delaware Municipal Court and also her testimony here at the trial.

"Mr. Shaw: If I may be heard on that, the rules just absolutely don't say that. In my memorandum which I filed and, I believe, is a part of the official file in this case, the discovery inspection of Grand Jury proceedings are governed by Rule 6 E and there must be a motion made or a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the Grand Jury. And there is utterly—well, this record is devoid of anything that even remotely approaches that. The rule does not provide for the in-camera inspection absent that motion. I don't think that is either shown or can be shown. And I think the rule, 6 E, specfically precludes the request that the defendant has made.

"The Court: I might say for the record that I ordered the Court Reporter to transcribe the testimony of Miss Epley before the Grand Jury. I have examined the testimony given in the preliminary hearing in the Municipal Court. I have read the transcript as prepared by the Court Reporter of Miss Epley's testimony before the Grand Jury and listened to her testimony here on the witness stand. Mr. Wickham, I can find very little variations all the way through.

"Mr. Wickham: We have exceptions.

"The Court: We will deny your motion. I feel as though I owed it to you to do that."

The Ohio Rules of Criminal Procedure provide authority for the defendant to obtain transcripts of grand jury testimony only as to his or a co-defendant's testimony before the grand jury. See Criminal Rule 16(B)(1)(a) (iii).

However, defendant contends that his right to the grand jury testimony of Patricia Epley arises because of the defendant's "particularized need" for such testimony

and therefore he is not bound by the limitations of Criminal Rule 16 (B)(1)(a)(iii).

We find this case to be one of first impression in Ohio.¹ *Pittsburgh Plate Glass Co.* v. *United States* (1959), 360 U. S. 395, and *Dennis* v. *United States* (1966), 384 U. S. 855, dealing with the concept of "particularized need" for grand jury testimony, notwithstanding the traditional secrecy protection that attends grand jury testimony, merit critical examination.

*Pittsburgh Plate Glass Co.* v. *United States, supra,* involved a Sherman Act prosecution. The defendant corporation moved for the delivery of the grand jury testimony of an important government witness after securing from the witness, on cross-examination, the admission that he had appeared before a federal grand jury on the subject of the prosecution three times. The defendant cited as authority for "the automatic delivery of the grand jury testimony" the case of *Jencks* v. *United States* (1957), 353 U. S. 657.² The defendant's motion was denied.

---

¹In *State* v. *Laskey* (1970), 21 Ohio St. 2d 187, 191, The Supreme Court mentioned the concept of "particularized need," in passing, in finding no error when the trial court denied a defense motion in a first degree murder case for the production of grand jury minutes and transcripts. The court held, at 191:

"In this case, appellant sought discovery of the grand jury transcript before trial for purposes of preparation. Generally, proceedings before a grand jury are secret and an accused is not entitled to inspect grand jury minutes before trial for the purpose of preparation or for purposes of discovery in general. This rule is relaxed only when the ends of justice require it, such as when the defense shows that a particularized need exists for the minutes which outweighs the policy of secrecy. *Pittsburgh Plate Glass Co.* v. *United States* (1959), 360 U. S. 395, 400, 3 L. Ed. 2d 1323, rehearing denied, 361 U. S. 855, 4 L. Ed. 2d 94. See 1 Antieau, Modern Constitutional Law, 300; 20 A. L. R. 3d 7, 19."

²In *Jencks*, the United States Supreme Court ruled that a defendant in a criminal trial in a federal district court was entitled to inspect reports made to the FBI by two government witnesses as to events and activities to which they testified at trial and without the intervention of the trial judge to determine relevancy and materiality and upon the government's exercise of its privilege to withhold, the criminal action must be dismissed.

Justice Clark, writing for the five man majority, declared that the ruling in *Jencks* did not apply nor did the so called Jencks Act, 71 Stat. 595, 18 U. S. C. (Sup. V 1950) Section 3500, which was characterized as excluding grand jury minutes from its operation.

Justice Clark held that any right to disclosure of grand jury testimony was covered by Rule 6(e)[3] of The Federal Rules of Criminal Procedure. He stated, at page 399:

"In fact, the federal trial courts as well as the Courts of Appeals have been nearly unanimous in regarding disclosure as committed to the discretion of the trial judge. Our cases announce the same principle, and Rule 6(e) is but declaratory of it. As recently as last Term we characterized cases where grand jury minutes are used 'to impeach a witness, to refresh his recollection, to test his credibility and the like' as instances of 'particularized need where the secrecy of the proceedings is lifted discretely and limitedly.' *United States* v. *Procter & Gamble,* 356 U. S. 677 (1958)."

Justice Clark also rejected the defendant corporation's contention that the trial court's discretion under Rule 6(e) must be exercised in accordance with the rationale of *Jencks,* so that a mere showing that the government's witness testified before the grand jury would give the defense the right to the delivery of the testimony, declaring such a procedure to run contrary to the "long established policy of secrecy" for grand jury proceedings.

However, Justice Clark recognized the principle of a "particularized need" for grand jury testimony but placed the burden on the defendant to show such a "particularized need" as he stated, at page 400:

"The burden, however, is on the defense to show that 'a particularized need' exists for the minutes which outweighs the policy of secrecy. We have no such showing here. As we read the record the petitioners failed to show any

[3]Rule 6(E) of the Ohio Rules of Criminal Procedure is substantially the same as its federal counterpart and both deal with the secrecy of grand jury proceedings and disclosure.

need whatever for the testimony of the witness Jonas. They contended only that they had a (right) to the transcript because it dealt with subject matter generally covered at the trial."

Finally, Justice Clark refused to consider the defendant's claim of error in that the trial court failed to examine the grand jury transcript for inconsistencies as no such request had been made of the trial judge, but only a claim of an absolute right to the transcript.

The dissent in *Pittsburgh Plate Glass Co.* v. *United States, supra,* sheds little light on what is required to establish a "particularized need" in order to obtain disclosure of grand jury testimony other than the description of the witness in question as "the principle prosecuting witness" and an argument that the need for secrecy as to the witness's grand jury testimony no longer existed. Additionally, Justice Brennan in his dissent, approving of the *Jencks* method, stated the belief that where "particularized need" is demonstrated, the grand jury transcript should be given to the defense counsel for his inspection and use rather than to provide for a preliminary inspection by the trial court and judicial determination as to what portion of the transcript would be useful for purposes of impeachment.

The Supreme Court of the United States next addressed the issues surrounding "particularized need" in *Dennis* v. *United States* (1966), 384 U. S. 855, a case involving a charge that the defendants conspired fraudulently to obtain the services of the National Labor Relations Board for their labor union by filing false non-communist affidavits. A unanimous court held that the trial court committed reversible error by denying the defense motion for the production of the the grand jury testimony of certain government witnesses because the defense had made a showing of "particularized need" for the production of the grand jury testimony by the following, at page 872:

"1. The events as to which the testimony in question related occurred between 1948 and 1955. The grand jury testimony was taken in 1956, while these events were re-

latively fresh. The trial testimony which petitioners seek to compare with the 1956 grand jury testimony was not taken until 1963. Certainly, there was reason to assay the latter testimony, some of which is 15 years after the event, against the much fresher testimony before the grand jury.

"2. The motions in question involved the testimony of four of the eight government witnesses. They were key witnesses. The charge could not be proved on the basis of evidence exclusive of that here involved.

"3. The testimony of the four witnesses concerned conversations and oral statements made in meetings. It was largely uncorroborated. Where the question of guilt or innocence may turn on exactly what was said, the defense is clearly entitled to all relevant aid which is reasonably available to ascertain the precise substance of the statements.

"4. Two of the witnesses were accomplices, one of these being also a paid informer. A third had separated from the union and had reasons for hostility toward petitioners.

"5. One witness admitted on cross-examination that he had in earlier statements been mistaken about significant dates."

In *Dennis,* the Supreme Court again addressed the issues of the procedure to be followed by the trial court upon the determination that a "particularized need" had been demonstrated, holding at page 874:

"In *Pittsburgh Plate Glass, supra,* the Court reserved decision on the question whether *in camera* inspection by the trial judge is an appropriate or satisfactory measure when there is a showing of a "particularized need" for disclosure. 360 U.S., at 401. This procedure, followed by production to defense counsel in the event the trial judge finds inconsistencies, has been adopted in some of the Courts of Appeals. In the Second Circuit it is available as a matter of right. *While this practice may be useful in enabling the trial court to rule on a defense motion for production to it of grand jury testimony—and we do not disapprove it for that purpose—*it by no means disposes of the matter. Trial judges ought not to be burdened with the task or the respon-

sibility of examining sometimes voluminous grand jury testimony in order to ascertain inconsistencies with trial testimony. In any event, 'it will be extremely difficult for even the most able and experienced trial judge under the pressures of conducting a trial to pick out all of the grand jury testimony that would be useful in impeaching a witness.' *Pittsburgh Plate Glass*, 360 U. S., at 410 (dissenting opinion). Nor is it realistic to assume that the trial court's judgment as to the utility of material for impeachment or other legitimate purposes, however conscientiously made, would exhaust the possibilities. In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate." (Emphasis added.)

But for the passing reference in *State* v. *Laskey, supra,* to the concept of "particularized need" we find no other reference to the subject or the procedure to be utilized by the Ohio courts. Clearly, the Ohio Rules of Criminal Procedure are silent on the subject, except for the phrase "but may disclose such matters only when so directed by the court preliminary to or in connection with a judicial proceeding," in Crim. R. 6(e), which may inferentially permit the Ohio courts to disclose the grand jury testimony of a witness upon a showing of a "particularized need." We so find and proceed to a further consideration on the various issues that arise aliunde.

At the outset, the decisions of the United States Supreme Court on the subject of "particularized need" are predicated on the supervisory power of that court over the inferior federal courts, rather than on constitutional grounds requiring state court compliance by reason of the due process clause of the Fourteenth Amendment to the United States Constitution.

The issues that require resolution follow.

## I.

Does the burden to establish "particularized need" for a disclosure of the grand jury testimony of a witness rest with the defendant?

*Pittsburgh Plate Glass Co.* v. *United States, supra,*

clearly places the burden on the defendant to establish "particularized need" before grand jury testimony may be disclosed, and we adopt such a rule. The disclosure of grand jury testimony is an exception to the historical rule of secrecy that protects grand jury proceedings and he who would strip the mantle of secrecy from the proceedings must bear the burden of showing the need for such action.

## II.

What showing is required to establish a "particularized need" so as to require a disclosure of the grand jury testimony?

*Pittsburgh Plate Glass Co.* is authority for the proposition that the fact that the witness is a key witness, standing alone, is an insufficient basis to require disclosure of his grand jury testimony to the defendant. *Dennis*, on the other hand, points to a series of facts and events which were sufficient to establish "particularized need." Important facts in that determination included the passage of approximately seven years from the time of the grand jury testimony to the trial and also the fact that the subject matter of the court room testimony included the conversations and oral statements which were critical to the prosecution's case.

Some of the discussions on the subject of "particularized need" suggest that the only predicate for disclosure is a showing that the grand jury testimony might assist in impeaching the court room testimony. We reject such a broad interpretation of "particularized need." For if that be the test, every defendant in every criminal case could argue the existence of "particularized need."

We find and we so hold that a "particularized need" requires a showing that it is probable that the defendant will not obtain a "fair adjudication of the allegations placed in issue by the prosecution's witness" absent disclosure of the grand jury testimony of the witness. Such a test is consistent with the conclusions reached in *Pittsburgh Plate Glass Co., Dennis*, and *Laskey, supra*. In passing, we believe that it might be possible hypothetically for the defendant to demonstrate a "particularized need" for grand jury testimony for purposes other than impeachment.

## III.

Once a trial court finds and declares a "particularized need" to have been established, how and and on what basis is the defendant to be granted disclosure?

Where the request for the disclosure of grand jury testimony of a prosecuting witness is clearly limited to the impeachment purpose,[4] we find that the decision of the Ohio Supreme Court as reflected in *State* v. *White* (1968), 15 Ohio St. 2d 146, and as later codified in Criminal Rule 16(B)(1)(g), to be contrary to the procedure promulgated by the United States Supreme Court, in *Dennis,* for federal district courts.[5]

Thus, we hold that where the "particularized need" is limited to the impeachment purpose, then the trial court should proceed with the disclosure of the grand jury testimony in a manner consistent with the procedures estab-

---

[4]Disclosure of grand jury testimony for non-impeachment purposes should be controlled by the trial court in a manner calculated to insure the secrecy of the grand jury proceedings to the maximum extent possible, after consultation with the prosecuting attorney, and to the end that the defendant receives a fair trial.

[5]"Rule 16

Discovery and Inspection

* * *

(B) Disclosure of evidence by the prosecuting attorney.

(1) Information subject to disclosure. * * *

(g) In camera inspection of witness' statement. Upon completion of a witness's direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.

"If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.

"If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.

"Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal."

lished by Criminal Rule 16(B)(1)(g), rather than to deliver the grand jury transcript to the defense counsel to be used consistent with the practice advocated by *Dennis, supra.*

## IV.

When the trial court examines the grand jury testimony absent a declaration that the defendant has established "particularized need" for the testimony, what rights, if any, accrue to the defendant?

The trial court has no obligation to examine the grand jury testimony of a witness notwithstanding a defense request for the production of the same, absent a defense showing of a "particularized need." However, where the trial court, in such circumstances, undertakes such an examination, unassisted by counsel and absent a declaration that he has found "particularized need" to have been established, we find that no right accrued to the defendant by the mere fact of a judicial examination other than the right to have the grand jury testimony made a part of the record for appellate review, where the trial court denies disclosure to the defendant. It is conceivable that the trial court may conclude that even where the defendant is unable or has failed to meet the burden of showing a "particularized need," the defendant's right to a fair trial, under the particular circumstances of the case at hand, may be further protected  by such an independent judicial review, or as suggested  by the dissent in *Pittsburgh Plate Glass, supra*, such a review might assist the court in determining the motion.

We turn now to the case at hand. The defendant's motion for the production of the grand jury testimony of Patricia Epley was insufficient to demonstrate a "particularized need." The motion is silent as to the reason for the request and was subject to summary rejection as in *State* v. *Laskey, supra.* The motion did not describe Patricia Epley as the state's sole eye-witness to the killing. The motion did not declare that the defense had been unable to interview Patricia Epley. The motion did not disclose that the defendant was unable to prepare a defense

absent the grand jury testimony. In fact, the defendant had the opportunity to and did confront the witness, Patricia Epley, at the preliminary hearing. Further, the subject of Patricia Epley's testimony was not limited to oral conversations and circumstances in the long distance past, as in *Dennis*. In short, the trial court would have been justified in a summary rejection of the motion for Epley's grand jury testimony.

However, the trial court, following the direct testimony of Patricia Epley, extended to the defendant an additional opportunity to pursue his motion for the grand jury testimony. At that point, defense counsel indicated that the defense interest was limited to a consideration of whether her grand jury testimony "varied" from her preliminary hearing testimony and trial testimony. Thus, the issue for the trial court came into sharp focus with such a specific request for the grand jury testimony. The trial court then had before it Patricia Epley's direct testimony demonstrating that she was a companion of the defendant, an eye witness to the killing, and a person who had indirectly led the police to the defendant and the murder weapon.

On the issue of whether the defendant has met the burden of showing a "particularized need" for the disclosure of Patricia Epley's grand jury testimony for impeachment purposes, the trial court had for his consideration the substance of Patricia Epley's direct testimony, the fact of only a sixty-five day passage of time between the victim's death and the trial and the fact of a prior defense confrontation of the witness Epley at the preliminary hearing. We find the foregoing insufficient to establish the defendant's "particularized need" for the disclosure of Patricia Epley's grand jury testimony. We find no basis upon which the trial court should have found that it was probable that the defendant would not obtain a fair adjudication of the allegations placed in issue by the witness, Patricia Epley, absent a disclosure of her grand jury testimony.

We turn now to a consideration of the effect of the

trial court's independent and unilateral examination of the grand jury testimony of Patricia Epley conducted in the absence of a declaration by the trial court that a "particularized need" had been shown by the defendant. We find no support for the proposition that the trial court had concluded prior to trial, when he ordered the transcript of Patricia Epley's grand jury testimony, that the defendant had made a showing of a "particularized need." The trial court's response to the attorney for the defense when he finally denied the motion for the production of the grand jury testimony is entirely consistent with our conclusion that the trial court ordered and examined the grand jury testimony of Patricia Epley as a result of his zealous desire to protect the defendant's right to a fair trial, notwithstanding the defendant's failure to demonstrate a "particularized need" for Patricia Epley's grand jury testimony.

Following oral arguments before this court, and upon the discovery that the trial court had ordered and read the transcript of Patricia Epley's grand jury testimony, this court ordered, pursuant to Appellate Rule 9(E), a supplemental record to include such grand jury transcript limited to the testimony of Patricia Epley and extended to counsel the opportunity to examine the same and submit supplemental briefs. After reviewing the grand jury testimony, appellant's counsel submitted a supplemental brief alleging a number of inconsistencies upon comparing the grand jury testimony with the trial testimony. Upon review, we find only three inconsistencies, all on minor points and dealing primarily with the victim, Allen. We find the inconsistencies to be insignificant. They do not go to the material allegations of Patricia Epley's testimony.

We conclude that where the trial court examines the grand jury transcript of a state witness, absent a showing by the defense of a "particularized need" for the disclosure of the witness' testimony, and absent a declaration that the trial court found such a "particularized need," the defendant is not entitled to a disclosure of the transcript for impeachment purposes even though, as in this case, the transcript reveals minor inconsistencies in the grand

jury testimony and the trial testimony, not going to the material allegations of the witness' testimony. For the foregoing reasons, we overrule the second assignment of error.

We turn to a consideration of the defendant's remaining assignments of error which contend:

"1. The trial court erred in permitting Chief Deputy William B. Lavery to testify as to his opinion of whether or not the decedent knew he was going to be shot once it became clear that the sole basis of this opinion was the hearsay statements of Patricia Epley.

"3. The trial court erred in permitting the prosecutor to repeatedly inquire on voir dire examination as to whether or not drinking or intoxication could excuse the defendant's actions even if he were determined to be otherwise guilty.

"4. The court erred in refusing the defendant the right to introduce certain reports on the behavior of Patricia Ann Epley during her confinement in several mental institutions and which reports were proffered to prove the impaired and feeble condition of the witness's mind and memory and further to impeach the credibility of the witness."

The first assignment of error is not well taken and is overruled. First, the defense initiated the inquiry of Deputy Sheriff Lavery as to his opinion concerning whether or not the victim knew he was going to be shot. Second, defense counsel succeeded in showing that Lavery's opinion was based on hearsay rather than on his investigation of the murder scene; thus, he destroyed the effectiveness of Lavery's opinion. Assuming, arguendo, that it was error for the trial court not to sustain the defense motion to strike Lavery's opinion, once it developed that his opinion was based on hearsay, the error became harmless.

The third assignment of error is overruled. The question put by the prosecuting attorney to prospective jurors and the defendant's exception are as follows:

"Q. If it is shown to you on August 16, 1975, at the time the question of the shooting occurred, if it is shown to you that earlier in that day that the defendant had been

drinking and you are otherwise satisfied of the defendant's guilt, would you excuse his act and find him not guilty simply because he had been drinking?

"Mr. Wickham: Object.

"The Court: Overruled."

The question was not improper. Had the defense wanted to defend on the basis of "intoxication to the extent that he was incapable of reflection or deliberation," the prosecutor's question was not a barrier to such a defense or appropriate voir dire by the defendant.

The fourth assignment of error is not supported by the record upon our finding that the defendant failed to lay a proper foundation for the admissibility of the hospital records. Specifically, no witnesses were called to identify, authenticate, or otherwise describe the records. Having so determined, we do not reach the issue of whether the records were admissible, notwithstanding the provisions of R. C. 5123.89.

*Judgment affirmed.*

RUTHERFORD, P.J., and PUTMAN, J., concur.