THE STATE OF OHIO, APPELLANT, *v.*
CECOS INTERNATIONAL, INC., APPELLEE.

[Cite as State *v.* CECOS Internatl., Inc. (1988), 38 Ohio St. 3d 120.]

(No. 87-1091—Submitted May 18, 1988—Decided August 3, 1988.)

*Anthony J. Celebrezze, Jr.,* attorney general, *E. Dennis Muchnicki, Dale T. Vitale, Charles R. Dyas, Jr.,* and *George E. Pattison,* prosecuting attorney, for appellant.

*Bauer, Morelli & Heyd Co., L.P.A.,* and *Arnold Morelli,* for appellee.

*Jill R. Heck,* prosecuting attorney, urging reversal for *amicus curiae,* Ohio Prosecuting Attorneys Assn.

WRIGHT, J. The modern corporation is nearly omnipresent in American society. Yet, legal sanctions on corporate criminal activity are difficult to enforce because a corporation is but an intangible, ethereal being created by the state. Its actions affect employees, assets, the economy, and finally, society; yet, it remains, in Lord Thurlow's words, a being that "has no soul to be damned, and no body to be kicked."[1] Deterring and punishing corporate criminal conduct thus has become a difficult and sometimes elusive quest.

·One of the most controversial aspects of enterprise criminal liability concerns the problem of identifying who represents the corporation for purposes of indictment and prosecution. We address this question today in the setting of a discovery dispute between the state and the criminal defendant, CECOS International, Inc.

We begin by noting that the trial court's decision to disclose grand jury testimony may not be disturbed unless we find an abuse of discretion. *State* v. *Greer* (1981), 66 Ohio St. 2d 139, 20 O.O. 3d 157, 420 N.E. 2d 982, paragraph one of the syllabus. With this in mind, we now analyze the arguments posed by the state and defendant, as well as the applicable statutes and case precedent.

I

Crim. R. 16(B)(1)(a) permits disclosure of statements made by a "defendant" during grand jury proceedings.[2] A corporation operates through its employees, officers, and directors. Logic dictates that the employees whose criminal conduct may be imputed to the corporation constitute the corporate defendant. The gravamen of

---

[1] Williams, Criminal Law (2 Ed. 1961) 856, quoting Lord Thurlow.

[2] Crim. R. 16(B)(1)(a) provides in pertinent part:

"Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:

"(i) Relevant written or recorded statements made by the defendant or co-defendant, or copies thereof;

"(ii) Written summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer;

"(iii) Recorded testimony of the defendant or co-defendant before a grand jury."

this appeal, therefore, rests in the question of whose criminal conduct may be imputed to the corporation.

The criminal liability of an enterprise has evolved through three phases. The early common-law view was that a corporate body could not be criminally liable because it was incapable of forming the requisite criminal intent to commit a crime and could not be imprisoned.[3] Under the revised common-law view, criminal conduct of any employee acting on behalf of the corporation and within the scope of employment was generally imputed to the business entity upon the theory of vicarious liability.[4] The modern trend limits the revised common law by imputing criminal liability to high managerial personnel only.[5]

CECOS suggests Ohio follows the revised common-law view while the prosecution suggests Ohio subscribes to the modern trend. This issue is addressed, in part, by the Revised Code. R.C. 2901.03(A) states, in pertinent part, that "[n]o conduct constitutes a criminal offense against the state unless it is defined as an offense in the Revised Code." Thus, in Ohio, criminal liability is rigidly and precisely limited to those situations that the General Assembly has specifically delineated by statute.

In R.C. 2901.23, the General Assembly carefully identified which employees may create criminal liability for a business entity. R.C. 2901.23 provides in pertinent part:

"(A) An organization may be convicted of an offense under any of the following circumstances:

"* * *

"(4) If, acting with the kind of culpability otherwise required for the commission of the offense, its commission was authorized, requested, commanded, tolerated, or performed by the board of directors, trustees, partners, or by a high managerial officer, agent, or employee acting on behalf of the organization and within the scope of his office or employment. * * *"

Appellee suggests *any* employee's

---

[3] *State* v. *Great Works Milling & Mgmt. Co.* (1841), 20 Me. 41, 37 Am. Dec. 38; LaFave & Scott, Criminal Law (1972), Section 33. See, generally, Williams, Criminal Law, *supra*, at 853-856.

[4] *United States* v. *Nearing* (D.N.Y. 1918), 252 F. 223, 231. See, also, *Palatka & I. R. Ry. Co.* v. *State* (1887), 23 Fla. 546, 3 So. 158 (corporation subject to prosecution for obstructing a highway); *State* v. *Ice & Fuel Co.* (1914), 166 N.C. 366, 81 S.E. 737 (corporation liable for obtaining money by false pretenses); *People* v. *Star Co.* (1909), 135 App. Div. 517, 120 N.Y. Supp. 498 (corporation liable for criminal libel); *Stewart* v. *Waterloo Turn Verein* (1887), 71 Iowa 226, 32 N.W. 275 (corporation liable for selling beer to an intoxicant in violation of statute); *State* v. *Eastern Coal Co.* (1908), 29 R.I. 254, 70 A. 1 (entity can be held liable for criminal conspiracy); *People* v. *Canadian Fur Trappers' Corp.* (1928), 248 N.Y. 159,

161 N.E. 455, 59 A.L.R. 372 (corporation may be liable for grand larceny); *State* v. *Security Bank of Clark* (1892), 2 S.D. 538, 51 N.W. 337 (entity may be indicted for usury); *State* v. *Belle Springs Creamery Co.* (1910), 83 Kan. 389, 111 P. 474 (company may be indicted for sale of butter in violation of statute). One court held a corporation could be held criminally liable for manslaughter in *State* v. *Lehigh Valley RR. Co.* (1917), 90 N.J. Law 372, 103 A. 685. See, generally, *State, ex rel. Losey,* v. *Willard* (Fla. 1951), 54 So. 2d 183, 185 ("[A] corporation may be held liable for acts of misfeasance, malfeasance or nonfeasance, even though the act constituting the offense may be ultra vires, or one as to which a specific intent is essential.").

[5] See *United States* v. *Carter* (C.A. 6, 1963), 311 F. 2d 934; *Continental Baking Co.* v. *United States* (C.A. 6, 1960), 281 F. 2d 137.

criminal conduct may be imputed to the corporation.[6] CECOS correctly notes there is no Ohio case law on point that construes the statute. In support of its position, appellee cites cases from several federal courts that have determined a "corporation may be criminally bound by the acts of subordinate, even menial, employees." *Standard Oil Co. of Texas* v. *United States* (C.A. 5, 1962), 307 F. 2d 120, 127. See, also, *United States* v. *Illinois Central Railroad* (1938), 303 U.S. 239 (corporation subject to penalty liable for acts of manual laborers); *United States* v. *George F. Fish, Inc.* (C.A. 2, 1946), 154 F. 2d 798 (corporation may be criminally liable for acts of salesman); *Riss & Co.* v. *United States* (C.A. 8, 1958), 262 F. 2d 245 (criminal conduct of clerical workers imputed to corporation).

Appellee relies primarily on *United States* v. *Hughes* (C.A. 5, 1969), 413 F. 2d 1244. *Hughes* applies the reasoning of *Standard Oil* to a dispute under former Fed. R. Crim. P. 16(a)(3). The court observed at 1252:

"The significance of a witness' testimony to the inquiry into potential corporate criminal liability, and to the defense in preparing its case, does not depend upon organizational charts. * * * If the door to Rule 16(a)(3) is to be open to corporations at all — and we are of the opinion that it must — its availability should not be based upon corporate titles."

*Hughes* dealt with Fed. R. Crim. P. 16(a)(3) prior to its amendment. The amended rule, Fed. R. Crim. P. 16(a)(1)(A), effectively overruled *Hughes* by requiring that the employee have authority to "legally * * * bind the defendant." Nevertheless, the assertion that organizational charts and titles should not determine potential criminal liability remains viable in many jurisdictions. It is not the only viable argument on this subject, however.

The state submits the corporate defendant, for purposes of criminal liability, is composed of those employees with the assigned authority and function to act on behalf of the corporation with regard to the matter that gave rise to the criminal offense. In support of its argument, the state relies on a strict construction of R.C. 2901.23.

Inherent in the state's argument is that R.C. 2901.23(A)(4) requires authorization by "a *high managerial* officer, agent, or employee * * *," while subsection (A)(1), which refers to misdemeanors, permits authorization by "*an* officer, agent, or employee." (Emphasis added.) Conspicuously absent in the description of the (A)(1) class are the adjectives "high managerial."

The state submits the language in subsection (A)(4), therefore, should be construed to mean "high managerial officers, high managerial agents, or high managerial employees." Although the state concedes there is no Ohio precedent to support such a view, it suggests that any other construction would read the phrase "high managerial" out of the statute.

Accordingly, the state contends the high managerial personnel directly responsible for the proper disposal of waste at the site are the only employees whose criminal conduct may be imputed to the corporation. Those individuals constitute the "corporate defendant," and, consequently, only their grand jury testimony may be discovered and inspected by CECOS, pursuant to Crim. R. 16.

_____

[6] Appellee appeared to specifically eschew this position during oral argument of this case.

Both arguments may be maintained from a public policy standpoint. Nevertheless, a reasonable and appropriate construction of R.C. 2901.23 indicates a business entity may be found guilty of a criminal offense only if the criminal act or omission was approved, recommended, or implemented by high managerial personnel with actual or implied authority to approve, recommend or implement same. High managerial personnel are those who make basic corporate policies.

Consequently, we hold a corporate employee's grand jury testimony is discoverable under Crim. R. 16(B)(1)(a) when the statement concerns an alleged criminal act or omission performed on behalf of the corporation and within the scope of employment. The declarant must hold sufficient authority to impute criminal culpability to the corporation.[7]

As noted above, we cannot disturb the trial court's ruling releasing the grand jury testimony unless we find an abuse of discretion. In *Warner* v. *Waste Management, Inc.* (1988), 36 Ohio St. 3d 91, 521 N.E. 2d 1091, we noted a mere analytical error does not constitute an abuse of discretion, but "where the trial court completely misconstrues the letter and spirit of the law, it is clear that the court has been unreasonable and has abused its

discretion." *Id.* at 99, 521 N.E. 2d at 1099, fn. 10. In the case before us, the trial court's analysis went beyond mere analytical error. Indeed, we believe the court misconstrued the letter and spirit of the law. Hence, we reverse the trial court's ruling on this issue.

## II

CECOS next contends it is entitled to the grand jury testimony of its employees under the particularized-need standard of Crim. R. 6(E).[8] The standard for particularized need is met where the defendant's need for the information outweighs the need to maintain the secrecy of the grand jury proceedings. *Greer, supra.* CECOS argues the need for the testimony outweighs that for secrecy because the employees called as trial witnesses could be impeached with their grand jury testimony.

The state agrees that grand jury testimony may be released if the defendant can show particularized need. To satisfy the particularized-need standard, the prosecution claims CECOS must show that it can only receive a fair trial if specific grand jury testimony is disclosed. *State* v. *Roberts* (1976), 50 Ohio App. 2d 237, 247, 4 O.O. 3d 211, 217, 362 N.E. 2d 1003, 1010. However, appellant submits that

---

[7] We note that Fed. R. Crim. P. 16(a)(1)(A) specifically provides that grand jury testimony of officers or employees who were able to legally bind the defendant in respect to the alleged conduct constituting the offense may be discovered prior to trial. We also note Fed. R. Crim. P. 16 has other language that differs from our rule. For these reasons, we decline the invitation to adopt the federal rule *in toto*.

[8] Crim. R. 6(E) provides in pertinent part:
"A grand juror, prosecuting attorney,

interpreter, stenographer, operator of a recording device, or typist who transcribes recorded testimony, may disclose matters occurring before the grand jury, other than the deliberations of a grand jury or the vote of a grand juror, but may disclose such matters only when so directed by the court preliminary to or in connection with a judicial proceeding, or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury."

this court rejected the notion that particularized need can be established on the basis of pretrial allegations of potentially inconsistent testimony in *State* v. *Laskey* (1970), 21 Ohio St. 2d 187, 50 O.O. 2d 432, 257 N.E. 2d 65, vacated in part on other grounds (1972), 408 U.S. 936.

Case precedent clearly indicates appellant's view is correct. CECOS demands across-the-board disclosure of all grand jury testimony solely on the basis that some of its witnesses could be impeached by testimony given before the grand jury. In *Laskey, supra,* we held that the determination of prejudice "can be made only after the witness testified at trial, and, generally, cannot be used by an accused for ascertaining the evidence of the prosecution for the purpose of trial preparation." *Id.* at 191, 50 O.O. 2d at 434, 257 N.E. 2d at 68. In *Greer, supra,* we recognized that the determination of particularized need is made at trial and that the court, *in*

*camera,* reviews the transcripts and discloses only those portions of testimony that are relevant. *Id.* at 150-151, 20 O.O. 3d at 164, 420 N.E. 2d at 989. In light of the case precedent noted above, we believe disclosure at this time would be premature.[9]

The final question we must address is whether the trial court abused its discretion by ordering discovery of the grand jury testimony under Crim. R. 6(E). Since its ruling directly conflicts with case precedent, we hold the court's decision was unreasonable.

Accordingly, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.[10]

*Judgment reversed and cause remanded.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS and H. BROWN, JJ., concur.

---

[9] In *Phung* v. *Waste Management, Inc.* (1986), 23 Ohio St. 3d 100, 23 OBR 260, 491 N.E. 2d 1114, we held an at-will employee of a hazardous waste disposal site whose employment was terminated due to his disclosure of a series of incidents involving unlawful handling of hazardous wastes had no recourse against the employer. With this ruling in mind, we note that the grand jury proceedings should be kept secret except as provided by law. A broad interpretation of Crim. R. 6(E) would, very likely, deter truthful grand jury testimony by corporate employees.

[10] Jurisdictional issues relevant to this appeal were not raised by the parties. This court declines to *sua sponte* address same.