The STATE of Ohio, Appellee,

v.

D.J. MASTER CLEAN, INC., Appellant.

[Cite as *State v. D.J. Master Clean, Inc.* (1997), 123 Ohio App.3d 388.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APC01–01.

Decided Sept. 30, 1997.

*Ronald J. O'Brien*, Franklin County Prosecuting Attorney, and *Joseph R. Durham*, Assistant Prosecuting Attorney, for appellee.

*David C. Winters*, for appellant.

PETREE, Judge.

Defendant, D.J. Master Clean, Inc., appeals from a judgment of the Franklin County Municipal Court, Environmental Division, finding it guilty of one count of placing industrial waste in a location where it caused pollution of the waters of the state in violation of R.C. 6111.04.[1]

Master Clean is a closely held corporation which specializes in commercial janitorial services and residential carpet-cleaning services. In its carpet-cleaning business, Master Clean uses GMC vans equipped with specialized carpet-cleaning equipment. When this equipment is used to clean a carpet, clean water from a one-hundred-twenty-five-gallon storage tank is forced into the carpet as steam and then extracted from the carpet by a powerful vacuum. The wastewater extracted from the carpet is then stored in a one-hundred-fifty-gallon holding tank. When the wastewater holding tank is full, it must be emptied before further carpet cleaning can be performed.

According to the state's evidence, during the early morning hours of Monday, October 23, 1995, Edward Klos was behind his place of business in the industrial

---

1. R.C. 6111.04 provides as follows: "No person shall cause pollution or place or cause to be placed any sewage, industrial waste, or other wastes in a location where they cause pollution of any waters of the state * * *."

park at 6663 Huntley Road loading his van in preparation for the day's work. At approximately 5:30 a.m., Klos noticed two red GMC vans with the words "MASTER CLEAN" painted on their sides stopped, one in front of the other, a few doors down from where he was working. The van in front was parked over a parking lot storm drain and was discharging some sort of liquid into the storm sewer, while the second van appeared to be waiting to repeat the procedure when the first van had finished. Klos immediately went and telephoned the Worthington Police Department to report what he had witnessed.

In response to Klos's report, Officer Michael Gibson of the Worthington Police Department was dispatched to 6663 Huntley Road. Officer Gibson arrived at 6663 Huntley Road at approximately 6:20 a.m., whereupon he was met by Klos, who told him what he had witnessed. Officer Gibson then inspected the area around the storm drain in question. According to Officer Gibson, the area around the drain was damp and he detected what appeared to be a soap or chemical residue in the area.

Officer Gibson then proceeded to Master Clean's place of business, which is located at 527 Schrock Road, just across the street from where the vans were seen discharging into the storm sewer. Officer Gibson exited his cruiser and walked up to Master Clean's building. As Officer Gibson approached the building, he could see several people working around a red van inside the building through an open overhead door. Officer Gibson walked up to the open door and asked the persons inside who was in charge. According to Officer Gibson, David Lee May came forward, introduced himself as the general manager, and indicated that he was in charge. Officer Gibson explained the situation to May, and inquired as to what the substance was that the vans had discharged into the storm sewer. In response, May explained that Master Clean's policy was to get permission to discharge the wastewater onto the lawns of its carpet-cleaning customers and, if unable to obtain such permission, to dispose of the wastewater through the sanitary sewer at the company's place of business. Before returning to his regular duties, Officer Gibson asked his radio dispatcher to notify Captain William Fields, the hazardous materials coordinator for the Worthington Fire Department, of the situation.

Captain Fields arrived at 6663 Huntley Road at approximately 10:50 a.m. and commenced an investigation of the reported discharge into the storm sewer. He examined the storm drain where the dumping was alleged to have occurred and traced the drain to where it empties into Rush Creek a short distance away. Captain Fields observed fibers of some sort in and around the drain grate, in the bottom of the drain, and where the drain empties into the creek. Fields then photographed these areas. Following his investigation, Captain Fields referred

the matter to the Franklin County Sheriff's environmental enforcement officer, Rick Klema.

Klema and Christopher Bonner, an official from the Ohio Environmental Protection Agency ("OEPA"), investigated the scene of the alleged discharge on October 27, 1995. Upon finding "a large amount of hair, fiber and dirt" around the drain opening and where the drain empties into the creek and photographing these areas, Klema and Bonner proceeded to Master Clean's place of business. Upon their arrival, they were met by Master Clean's president and CEO, Donald Kessler. Kessler was informed of the complaint which had been lodged against Master Clean and was presented with an OEPA notice of violation, which charged Master Clean with illegally disposing of wastewater from carpet cleaning into a storm sewer leading to waters of the state, and ordered the company to immediately clean up around the storm drain and where the sewer line empties into Rush Creek.

The case against Master Clean was tried to a jury in the Franklin County Municipal Court, Environmental Division, beginning on December 2, 1996. At the close of the state's case, Master Clean moved for a judgment of acquittal pursuant to Crim.R. 29(A). The trial court overruled the motion. At the close of its own case, Master Clean renewed its motion for acquittal. The trial court reserved its decision on the motion until after the jury returned its verdict. On December 6, 1996, the jury returned a guilty verdict. The trial court then overruled Master Clean's motion for acquittal and imposed sentence.

Master Clean appeals from the judgment of the trial court, assigning the following errors:

"[I.] The trial court's unreasonable admission into evidence of inflammatory and unfairly prejudicial character testimony in the prosecution's case-in-chief constitutes an abuse of discretion and a denial of fair trial guarantees secured by the Fifth and Fourteenth Amendments to the Unites States Constitution and by Article I, Sections 10 and 16 of the Ohio Constitution.

"[II.] The trial court erred to the substantial prejudice of appellant when it failed to enter a judgment of acquittal where no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt and when it failed to reject a jury verdict overwhelmingly against the weight of the evidence."

Master Clean's first assignment of error challenges the trial court's decision to allow, over objection, Laura Staten to testify that between 7:00 and 8:00 p.m. on October 12, 1993, she witnessed two red vans with the words "Master Clean Carpet Cleaning" painted on the side pull up and park over a storm sewer drain located in the rear parking lot of 6663 Huntley Road and

discharge some type of liquid into the drain. Master Clean argues that the admission of Staten's testimony violated Evid.R 404(B), which provides as follows:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The first sentence of Evid.R. 404(B) forbids the admission of evidence of other bad acts committed by a defendant for the purpose of proving that the character of the defendant makes it likely that he committed the crime charged. 1980 Staff Note to Evid.R. 404(B). However, the rule's second sentence provides that evidence of such other acts is admissible for other purposes to which it may be relevant. Staff Note, *supra.*

Master Clean contends that Staten's testimony was improperly admitted to show that the company was of a character which was consistent with the crime charged. We disagree. The incident described by Staten occurred in exactly the same manner and location as the crime with which Master Clean is charged. As a result, Staten's testimony was relevant to show that Master Clean had a plan or scheme for disposing of the wastewater generated by its carpet-cleaning vans by discharging that water into the storm sewer behind the industrial complex located at 6663 Huntley Road. *State v. Davis* (Apr. 6, 1995), Franklin App. No. 94APA08–1206, unreported, 1995 WL 170320.

Master Clean argues, however, that, even if Staten's testimony was relevant to one of the permissible purposes enumerated in the second sentence of Evid.R. 404(B), the testimony should have been excluded under Evid.R. 403(A), as its probative value for those purposes was "substantially outweighed by the danger of unfair prejudice." "In reaching a decision involving admissibility under Evid.R. 403(A), a trial court must engage in a balancing test to ascertain whether the probative value of the offered evidence outweighs its prejudicial effect." *State v. Steele* (Sept. 21, 1995), Franklin App. No. 95APA01–124, unreported, 1995 WL 559930. In order for the evidence to be deemed inadmissible, its probative value must be minimal and its prejudicial effect great. *State v. Morales* (1987), 32 Ohio St.3d 252, 258, 513 N.E.2d 267, 273–274. Furthermore, relevant evidence that is challenged as having probative value that is substantially outweighed by its prejudicial effects "should be viewed in a light most favorable to the proponent of the evidence, maximizing its probative value and minimizing any prejudicial effect" to the party opposing its admission. *State v. Maurer* (1984), 15 Ohio St.3d 239, 265, 15 OBR 379, 402, 473 N.E.2d 768, 792. Finally, a trial court's admissibility determination under Evid.R. 403(A) may be reversed only upon a

showing that the court abused its discretion. *State v. Hurt* (Mar. 29, 1996), Franklin App. No. 95APA06–786, unreported, 1996 WL 145486; *Steele, supra.*

It is self-evident that Staten's testimony created a considerable risk of unfair prejudice to Master Clean. However, immediately after Staten testified, the trial court carefully instructed the jury as follows:

"And I emphasize, you may not, under any circumstances, consider [Staten's testimony] to be proof of the character of Master Clean, to suggest that Master Clean acted in conformity with such character on October 23, 1995. That would be very unfair; because the law does not allow you, even if you believe this evidence were true, to punish Master Clean because you believe it may have done another act not charged as a crime in this case."

The trial court's clear and exacting limiting instruction severely reduced the danger of unfair prejudice presented by the admission of Staten's testimony. Given this fact, and the relevance of the testimony to show the existence of a plan on Master Clean's part, we cannot say that the trial court abused its discretion in admitting her testimony. Master Clean's first assignment of error is overruled.

 In its second assignment of error, Master Clean alleges that the trial court erred in refusing to grant its Crim.R. 29 motions for acquittal. Pursuant to Crim.R. 29(A), the trial court is authorized to enter a judgment of acquittal if the evidence presented is insufficient to sustain a conviction on the offense charged. However, a trial court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether a material element of the crime has been proven beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus. Furthermore, in reviewing a ruling on a motion for judgment of acquittal, a reviewing court must construe the evidence in a light most favorable to the prosecution. *State v. Wolfe* (1988), 51 Ohio App.3d 215, 216, 555 N.E.2d 689, 690–691.

 Master Clean first argues that the state failed to present sufficient evidence to allow a jury to conclude that the liquid discharged from its vans on October 23, 1995 was "industrial waste" within the meaning of R.C. 6111.04. In making this argument, Master Clean does not contend that the wastewater which results from the process of cleaning carpets is not "industrial waste" for purposes of R.C. 6111.04.[2] Instead, Master Clean argues that there was insufficient

---

**2.** R.C. 6111.01(C) defines the term "industrial waste" for purposes of R.C. Chapter 6111 as follows: " 'Industrial waste' means any liquid, gaseous, or solid waste substance resulting from any process of industry, manufacture, trade, or business, or from the development, processing, or recovery of any natural resource, together with such sewage as is present."

evidence to allow the jury to conclude that the liquid discharged from its vans on October 23, 1995 was wastewater rather than clean water.

Officer Gibson testified that he found a soapy residue at the drain into which the Master Clean vans were reported to have discharged liquid on October 23, 1995. Further, both Captain Fields of the Worthington Fire Department and Officer Klema of the Franklin County Sheriff's Department testified that they found fibers and other debris at the site of the discharge which looked as though they had come from carpet cleaning. Finally, the jury was shown pictures of this scene taken by Captain Fields and Officer Klema which plainly show what appears to be a large quantity of soggy carpet fibers around the drain in question. This evidence was sufficient to permit a jury to conclude that the liquid which Klos saw being discharged from Master Clean's vans was wastewater resulting from the carpet-cleaning process rather than clean water.

█ Master Clean also argues that the state failed to present sufficient evidence to impose liability upon the corporation for its employees acts of discharging wastewater into the waters of the state. R.C. 2901.23 sets forth the circumstances in which a business entity may be held criminally liable for the acts of its employees. In the present case, the state charged Master Clean under R.C. 2901.23(A)(4), which provides as follows:

"(A) An organization may be convicted of an offense under any of the following circumstances:

" * * *

"(4) If, acting with the kind of culpability otherwise required for the commission of the offense, its commission was authorized, requested, commanded, tolerated, or performed by the board of directors, trustees, partners, or by a high managerial officer, agent, or employee acting in behalf of the organization and within the scope of his office or employment."

█ The Ohio Supreme Court has interpreted this provision to mean that a corporation may be found guilty of a criminal offense only if the criminal act or omission was authorized, requested, commanded, tolerated, or performed by a high managerial officer, a high managerial agent, or a high managerial employee of the corporation who has policy-making authority over the area at issue. *State v. CECOS Internatl., Inc.* (1988), 38 Ohio St.3d 120, 123, 124, 526 N.E.2d 807, 810–811, 811–812. "High managerial personnel are those who make basic corporate policies." *Id.* at paragraph one of the syllabus.

In the present case, Master Clean was prosecuted on the theory that the corporation's high managerial personnel recklessly tolerated the practice of discharging wastewater from the carpet-cleaning process into the storm sewers.

Master Clean contends that the state failed to present any evidence from which a jury could find that a high managerial official of the corporation tolerated the practice.

At trial, Master Clean's sales manager, Van Wilcox, testified that, on September 12, 1995, he received a telephone call from OEPA regarding a complaint that a Master Clean van had been seen discharging liquid down a storm sewer earlier in the day. Wilcox testified that he informed Kessler of the complaint. In addition, the state admitted a letter addressed to Wilcox at Master Clean and dated September 18, 1995, in which OEPA followed up on its earlier telephone call. The letter again notified Master Clean of the report of an illegal discharge by one of its vans on September 12, 1995, and suggested several possible alternatives for disposing of wastewater. Kessler testified that he read this letter when he opened the mail before passing it on to Wilcox.

In addition, the evidence revealed that at the time of the incident in question, Master Clean's drivers had three legal options for disposing of carpet-cleaning wastewater: they could discharge it onto a customer's lawn with the customer's permission; they could discharge it at the Columbus wastewater receiving station; or they could discharge it into the sanitary sewer, via the single toilet located in Master Clean's shop. Kessler testified that only forty to fifty percent of Master Clean's residential customers allow wastewater to be discharged onto their lawns, and that he was not aware of his employees ever having used the Columbus wastewater receiving station. Wilcox, however, testified that approximately ninety percent of the carpet-cleaning vans returned to the shop at the end of the day with their wastewater holding tanks empty.

Finally, Kessler testified that after he learned of the reported illegal discharge of October 23, 1995, the company created a written addendum to the company's policy handbook which listed the acceptable alternatives for disposing of carpet-cleaning wastewater, as follows:

"1. With permission of clients, waste water can be discharged into a toilet or floor drain connecting to a sanitary sewer.

"2. Waste water can be brought back to the company to be discharged in the sanitary sewer.

"3. With permission of clients, waste water can be discharged over the client's lawn, without causing runoff to storm sewers or bodies of water." [3]

---

3. Although the addendum, which was admitted into evidence, is dated October 21, 1995, Kessler testified that the date was a typo and that the addendum was not created until after he learned of the reported discharge of October 23, 1995.

Master Clean distributed this addendum to each of its carpet cleaners and required them to sign and return it.

The above evidence is sufficient to support a finding that Kessler knew or should have known that Master Clean's employees were regularly discharging carpet-cleaning wastewater into the storm sewers, and that he nonetheless failed to take meaningful steps to prevent the practice until after he learned that Master Clean was being charged with a crime. Based thereon, a jury could reasonably conclude that Kessler recklessly tolerated the discharge of October 23, 1995. Master Clean's second assignment of error is overruled.

Having overruled Master Clean's assignments of error, we hereby affirm the judgment of the Franklin County Municipal Court, Environmental Division.

*Judgment affirmed.*

TYACK, P.J., and LAZARUS, J., concur.