[Cite as *State v. Waters*, 2017-Ohio-650.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103932**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## WILLIAM WATERS, III

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-596253-B

**BEFORE:**  Blackmon, J., E.T. Gallagher, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:**  February 23, 2017

**ATTORNEYS FOR APPELLANT**

Robert Tobik
Cuyahoga County Public Defender

By:   Paul Kuzmins
Erika B. Cunliffe
Assistant Cuyahoga County Public Defenders
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By: Margaret Kane
Kerry A. Sowul
Holly Welsh
Assistant County Prosecutors
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1} William Waters, III ("Waters") appeals his convictions for various sex offenses and accompanying sentence of life in prison without the possibility of parole. Waters assigns 13 errors for our review.[1]

{¶2} Having reviewed the record and pertinent law, we affirm. The apposite facts follow.

{¶3} In July 2014, 15-year-old K.L. told her mother ("Mother") that Waters, who, at the time, was Mother's husband and K.L.'s stepfather, had been sexually abusing her for several years. Mother and K.L. filed a report with the Westlake Police Department. After interviewing K.L. and her younger sisters, H.L. and E.L., the police identified other alleged victims. The police searched Waters's Westlake home and discovered that he had fled the state, taking with him several electronic data storage devices. The police seized multiple cell phones, electronic data storage devices, and a personal computer that Waters left behind.

{¶4} Waters was arrested on October 2, 2014, in Arkansas. After searching Waters's hotel room[2] and van, authorities seized numerous additional electronic devices with videos and images of child pornography. Additionally, the police recovered flash drives from Waters's pockets, which also contained child pornography, including images of Waters and K.L. engaging in unlawful sexual conduct.

---

[1] *See* appendix.

[2] Although Waters was arrested in Arkansas, he had been staying in a hotel in Oklahoma near the Arkansas border.

**{¶5}** Waters was indicted on October 14, 2014, in Cuyahoga C.P. No. CR-14-588664 and on February 2, 2015, in Cuyahoga C.P. CR-14-591898. On June 4, 2015, Waters was charged, in the case at issue, with 68 felony counts including rape, kidnapping, gross sexual imposition, and child pornography involving victims K.L., H.L., E.L., S.S., and K.D. The charges in all three cases stemmed from developments in the investigation of K.L.'s accusations of Waters.

**{¶6}** On September 9, 2015, the court dismissed cases CR-14-588664 and CR-14-591898. The case at issue went to trial, and on November 17, 2015, a jury found Waters guilty of 37 counts involving three victims. Waters was also convicted of sexual motivation and sexually violent predator specifications. On November 25, 2015, the court sentenced Waters to life in prison without the possibility of parole.[3] Waters now appeals his convictions and sentence.

## Motion to Suppress Evidence

**{¶7}** In Waters's first, second, and third assigned errors, he argues that the court erred by denying his motion to suppress electronic evidence.

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual

---

[3]Waters's aggregate prison sentence is life without the possibility of parole as a result of his conviction of rape of a child under ten years of age. The court also sentenced Waters to a prison term of 48 years-to-life on his other convictions, to be served prior and consecutive to the life without parole term. Waters's appeal challenges only the life without parole term; therefore, the remainder of his sentence need not be further addressed.

questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶8} In the case at hand, six search warrants were issued between July and October 2014, regarding: Waters's Westlake home; the electronic devices recovered from his Westlake home; Waters's motel room in Oklahoma; the van Waters was driving in Oklahoma and/or Arkansas; the electronic devices recovered from his motel room and van; and the electronic data storage devices recovered from Waters's pockets when he was arrested.

{¶9} Waters argues in his first and third assigned errors that "the underlying search warrant affidavits failed to provide any facts that supported a finding of probable cause to believe that Waters had transferred the photo of K.L. from his LG G-Z cell phone to a computer or data storage device * * *." Waters does not challenge the allegation that he used a cell phone to photograph himself engaging in unlawful sexual conduct with K.L. Rather, he argues that "probable cause did not exist to seize any device other than the LG G-Z cell phone that was used to take the photo."

**{¶10}** As support for his argument, Waters cites *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 106, which holds that:

> the particularity requirement of the Fourth Amendment applies to the search of a computer and requires a search warrant to particularly describe the items believed to be contained on the computer with as much specificity as the affiant's knowledge and the circumstances of the case allow and that the search be conducted in a manner that restricts the search for the items identified.

**{¶11}** The facts concerning the search warrant in *Castagnola* are markedly different than the facts concerning the search warrant in the case at hand. In *Castagnola*, a witness "received a series of text messages * * * from [the defendant] bragging about having damaged [the victim's] vehicles." The defendant also told the witness that the defendant had to "look up" the victim's address on court records. *Id.* at ¶ 3. The police detective inferred that the defendant "looked up" the victim's address online. *Id*. at ¶ 21-25. The detective testified that this inference, coupled with the defendant's "blatant" text messages, led him to believe that there are "probably other items in the house that would be of evidentiary value." *Id.* at ¶ 25.

**{¶12}** Based on this information, a magistrate issued a search warrant for "[r]ecords and documents either stored on computers * * * or any other electronic recording device * * *" relating to the vandalism and criminal damaging offenses with which the defendant was charged. *Id.* at ¶ 28. The Ninth District Court of Appeals upheld the warrant,

finding that "[a]s a matter of common sense, the issuing judge could have determined that [the defendant] used a computer to conduct the foregoing online searches such that the computer would contain evidence of his criminal activities." *State v. Castagnola*, 9th Dist. Summit Nos. 26185, 26186, ¶ 13.

{¶13} The Ohio Supreme Court reversed and found that the search warrant violated the defendant's Fourth Amendment rights.

> We * * * reject the trial court's supposition that statements sent by text message admitting criminal activity create substantial basis for concluding that evidence of a crime will be found on a computer. Similarly, we are not inclined to leap to the conclusion that the information stored on a phone will necessarily be backed up on a computer. Although we are in the computer age, records * * * still exist in paper form and are available to the public in * * * offices around the state.

*State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.2d 638, ¶ 63.

{¶14} Furthermore, the recorded conversation between the witness and the defendant revealed that the defendant never used the term "online" when talking about looking up the victim's address. The court held that the detective's use of the term "online" in the affidavit was an unwarranted inference, and "there was no probable cause to believe that computer in [the defendant's] residence was used in furtherance of the alleged crimes." *Id.* at ¶ 61.

{¶15} Search warrants must particularize the items to be searched for to the best of the authorities' knowledge at the time the warrant is issued. *Id.* at ¶ 88. "[T]he Fourth Amendment does not require a search warrant to specify restrictive search protocols, but we also recognize that the Fourth Amendment does prohibit a 'sweeping

comprehensive search of a computer's hard drive.'" *Id.* "The logical balance of these principles leads to the conclusion that officers must describe what they believe will be found on a computer with as much specificity as possible under the circumstances." *Id.*

{¶16} In *Castagnola*, the authorities used text messages and an unsubstantiated inference of an online inquiry as the basis to search for incriminating evidence of vandalism on the defendant's computer. The Ohio Supreme Court found that this violated the defendant's Fourth Amendment rights. *Id.* at 107-108. In the case at hand, the authorities used allegations of child pornography as the basis to search for incriminating evidence of child pornography on the defendant's electronic storage devices. This search is neither overbroad nor insufficiently particularized. *See, e.g., U.S. v. Deppish*, 994 F.Supp.2d 1211, 1220 (Kan.2014) ("A temporal limitation was not reasonable because child pornography collectors tend to hoard their pictures for long periods of time.")

{¶17} Upon review, we find that the search-warrant affidavit for Waters's Westlake home contains sufficient information "that there is a fair probability that evidence of a crime will be found in a particular place." *Id.* at ¶ 35. Specifically, the police believed to find child pornography on Waters's electronic devices. According to Westlake Police Detective Roseanna McCoy, K.L. stated that "since age of eight, [Waters] had been sexually abusing her by showing her pornographic images," and "Waters took a picture of his penis inserted in [K.L.'s] vagina. Waters used his cell phone to take the picture."

{¶18} Furthermore, the affidavit stated that "cell phones are readily capable of transferring images to computer devices and other electronic storage media *

* * ." Mother told McCoy that "Waters is known to keep various SD cards in random jacket pockets throughout the house." Mother and K.L. told McCoy that Waters was "computer savvy," and he used a desktop computer at the Westlake house. The affidavit specified the property to be searched to include the following: "cellular phones, SD cards, desktop computer system, [and] any device capable of storing video files, picture files, [and] images * * * ."

{¶19} When the police executed this search warrant on July 19, 2014, they learned that Waters had left the state of Ohio. The police seized ten cellular phones, a computer tower and hard drive, approximately one dozen thumb or USB drives, and several other electronic storage devices, such as DVD-Rs, SIM cards, and SD cards from Waters's house. Police also determined that computers and other electronic devices were missing from Waters's Westlake home.

{¶20} Detective McCoy testified at the suppression hearing that it was unclear to whom the multiple cell phones found in the house belonged. "They were inside the home in a drawer together. And because * * * these images can be transferred, I was looking for the photographs and the different images that [K.L.] had reported to me about [Waters] taking photographs of her while he was having sex with her." Detective McCoy also testified that K.L. told her "about other instances where [Waters] photographed her or took videos of her having sex." Although Waters focuses on one photograph that he took on a cell phone, the affidavit contains information that Waters had been showing K.L. pornographic images for years.

**{¶21}** Asked what the police were searching for based on the warrants issued, Detective McCoy testified as follows:

Any type of child pornography videos of any sexual assaults involving any of the victims, because after my investigation there were now four victims. Any type of text messages on Kick or chats indicating [Waters] talking to any of the non family member victims. Any text messages. Pretty much anything that could be stored in those devices.

**{¶22}** Upon review of this evidence, we find that there was probable cause to believe that evidence of a crime would be found on the electronic devices in Waters's home.

**{¶23}** Waters further argues in his second assigned error that "because the probable cause to search for the photo of K.L. was two years old and stale," the search of his computer and electronic data storage devices violated the Fourth Amendment. A review of the search-warrant affidavits shows that it is unclear when Waters took the picture of his penis inserted in K.L.'s vagina. K.L. recalled that it took place in the Westlake residence and claimed that Waters raped her vaginally and anally "two to three times a week at the Westlake home over the past two years." Nonetheless, "[t]he question of staleness is not measured solely by counting the days between the events listed in the affidavit and the application for the warrant." *State v. Willard*, 8th Dist. Cuyahoga No. 99184, 2013-Ohio-3001, ¶ 16.

{¶24} In determining whether information in a search-warrant affidavit is "stale," courts look to the following factors: "the character of the crime; the criminal; the thing to be seized; * * * whether it is perishable; the place to be searched; and whether the affidavit relates to a single isolated incident or ongoing criminal activity." *Id.* As it relates to cases involving child pornography, the staleness analysis is "sensitive to technology and to the particular criminal activity at issue." *Id.* at ¶ 18. Ohio courts, as well as courts across the country, have held that "child pornography collectors tend to retain their collections in secure, private, but available places for extended periods of time [and] possessors of child pornography often obtain and retain images of child pornography on their computers." *State v. Ingold*, 10th Dist. Franklin No. 07AP-648, 2008-Ohio-2303, ¶ 25 (citing *U.S. v. Riccardi*, 405 F.3d 852 (C.A.10, 2005)). *See also U.S. v. Lamb*, 945 F.Supp. 441, 460 (N.D.N.Y.1996) ("The observation that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes is supported by common sense and the cases").

{¶25} In the case at hand, the allegations are of ongoing criminal activity including child pornography and rape. Waters fled the jurisdiction upon learning of the claims against him and took several personal electronic data storage devices. The initial search warrant was for Waters's home, where numerous electronic devices were seized. The police got a second search warrant on August 1, 2014, authorizing the search of these electronic devices for communication between Waters and the alleged victims, as well as

photographs that may be used as evidence in the case. Upon review, we cannot say that K.L.'s allegation that Waters took illegal pictures of her was stale.

**{¶26}** We find that the search warrants in the case at hand did not violate Waters's Fourth Amendment rights, and his first three assigned errors are overruled.

## Speedy Trial

**{¶27}** In his fourth assigned error, Waters argues that the court should have granted his motion to dismiss based on speedy trial violations. Specifically, Waters argues that the June 4, 2015 indictment should not be subject to waiver of speedy trial rights, because it added allegations regarding a victim ("Jane Doe VII") previously not mentioned in the former indictments.

**{¶28}** When an appellate court reviews an allegation of a speedy trial violation, it "should apply a de novo standard of review to the legal issues but afford great deference to any findings of fact made by the trial court." *State v. Barnes*, 8th Dist. Cuyahoga No. 90847, 2008-Ohio-5472, ¶ 17. Ohio's speedy trial statute, R.C. 2945.71(C)(2), states in pertinent part that "[a] person against whom a charge of felony is pending * * * [s]hall be brought to trial within [270] days after the person's arrest." Furthermore, "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E).

**{¶29}** Waters was extradited back to Cuyahoga County on October 26, 2014, where he was transported to the jail. On March 25, 2015, Waters signed a waiver of his speedy trial rights. Waters was reindicted on June 4, 2015, in the instant case.

**{¶30}** Despite the addition of another victim, Waters argues that "the charges set forth in the [third] indictment stem from facts and circumstances that were known to the State of Ohio, at the time the State of Ohio obtained the first indictment in the within matter." In essence, Waters argues that the charges concerning Jane Doe VII should "relate back" to the prior indictment for speedy trial purposes. Therefore, Waters argues, the subsequently charged offenses are not subject to his speedy trial waiver nor are they subject to tolling events such as pretrial motions.

**{¶31}** As support for his argument, Waters cites *State v. Adams*, 43 Ohio St.3d 67, 70, 538 N.E.2d 1025 (1989), which holds that "when an accused waives the right to a speedy trial as to an initial charge, this waiver is not applicable to additional charges arising from the same set of circumstances that are brought subsequent to the execution of the waiver." Waters does not explain how allegations concerning an additional victim arise from the "same set of circumstances" as the offenses charged in the previous indictment. In *Adams*, the Ohio Supreme Court reaffirmed its holding in *State v. Baker*, 78 Ohio St.3d 108, 110, 676 N.E.2d 883 (1997), that "[a] later indictment is not subject to the speedy-trial timetable of an earlier indictment or arrest 'when additional criminal charges arise from facts different from the original charges, or the state did not know of these facts at the time of the initial indictment.'" *Adams* at ¶ 84 (quoting *Baker*).

**{¶32}** Upon review, we find that the charges involving Jane Doe VII are not subject to the previous indictments' speedy trial calculations, because these new charges are not based on the same set of facts as the charges in the first two indictments. As this was

Waters's only argument that his speedy trial rights were violated, his fourth assigned error is overruled.

## Access to Grand Jury Transcripts

{¶33} In his fifth assigned error, Waters argues that the court erred when it denied him access to the grand jury transcripts. Specifically, Waters argues that "the grand juries must have heard conflicting or differing testimony," because Waters's indictments in cases CR-14-588664, CR-14-591898, and the case at hand contain inconsistent evidence.

{¶34} On June 26, 2015, Waters filed his "motion to compel State of Ohio to disclose transcripts of all grand jury proceedings." On September 9, 2015, cases CR-14-588664 and CR-14-591898 were dismissed. Waters's request for the grand jury transcripts was a pretrial motion; therefore, Waters was not claiming that trial testimony was inconsistent with facts presented in the indictments. Rather, Waters claimed that there were inconsistencies regarding the dates and offenses in all three indictments. Waters summarily concluded that the failure to disclose the grand jury proceedings denied him a fair trial.

{¶35} The decision whether to disclose grand jury transcripts is reviewed for an abuse of discretion. *State v. Greer*, 66 Ohio St.2d 139, 148, 420 N.E.2d 982 (1981). Witness testimony presented to a grand jury may be disclosed by the state "only when so directed by the court * * * or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." Crim.R. 6(E). In *State v. Sellards*, 17 Ohio

St.3d 169, 173, 478 N.E.2d 781 (1985), the Ohio Supreme Court found that the defendant "demonstrated a particularized need to inspect the grand jury testimony [when] the state's witnesses testified to significantly different time frames than those presented in the indictment or the bill of particulars."

{¶36} Ohio courts have held that the "release of grand jury testimony requires a showing of particularized need, which cannot be established on the basis of speculative pretrial allegations of potentially inconsistent testimony." *State v. Godfrey*, 181 Ohio App.3d 75, 2009-Ohio-547, 907 N.E.2d 1230, ¶ 15 (3d Dist.). *See also State v. CECOS Internatl. Inc.*, 38 Ohio St.3d 120, 526 N.E.2d 807 (1988); *State v. Laskey*, 21 Ohio St.2d 187, 191, 257 N.E.2d 65 (1971).

{¶37} In *State v. Webb*, 70 Ohio St.3d 325, 638 N.E.2d 1023 (1994), the Ohio Supreme Court affirmed the denial of a request for grand jury transcripts, finding that the defendant did not specify a particularized need for the testimony. "Webb speculates that the grand jury testimony might have contained material evidence or might have aided his cross-examination of [witnesses] by revealing contradictions. These arguments could be made in every case." *Id.* at ¶ 31.

{¶38} In the case at hand, Waters failed to identify any trial testimony that was inconsistent with the allegations in the indictment of which he was convicted. As such, we find that the court acted within its discretion in denying Waters's request for the grand jury transcripts, and his fifth assigned error is overruled.

## Severance of Joined Offenses

**{¶39}** In his sixth assigned error, Waters argues that he was denied a fair trial when the court failed to sever three unrelated cases. Specifically, Waters requested that "the court sever the counts in such a way that [he] would only be forced to defend himself against allegations involving one victim at a time."

**{¶40}** Appellate review of a trial court's decision on joinder is for an abuse of discretion. *State v. Grimes*, 8th Dist. Cuyahoga No. 94827, 2011-Ohio-4406, ¶ 15. Crim.R. 8(A) states in part that "[t]wo or more offenses may be charged in the same indictment * * * if the offenses charged * * * are of the same or similar character, * * * or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." However, pursuant to Crim.R. 14, "[i]f it appears that a defendant * * * is prejudiced by a joinder of offenses * * * in an indictment, * * * the court shall order an election or separate trial of counts * * *."

**{¶41}** The defendant bears the burden of showing that the court's denial of the severance of joined offenses was prejudicial. The burden then shifts to the state to rebut the defendant's claim by showing that 1.) the facts of the offenses at issue would be admissible as "other acts evidence" under Evid.R. 404(B) in separate trials, and 2.) "evidence of each crime joined at trial is simple and direct." *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 95-96 (quoting *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990)).

**{¶42}** In claiming prejudice, Waters argues although "the allegations all involved sexual misconduct, the offenses themselves were qualitatively different." Waters further argues that "by trying them together, a fact finder would have overlooked those differences and simply concluded that given the sheer number of complainants, Waters had to have committed the misconduct alleged."

**{¶43}** The state, on the other hand, argues that the offenses were all part of Waters's course of criminal conduct and that the jury was able to differentiate the counts, because Waters was found not guilty of eight offenses regarding three of the alleged victims.

**{¶44}** Upon review, we find that Waters failed to meet his initial burden of showing prejudice. Five victims testified that Waters engaged in illegal sexual conduct with them on various separate occasions. The jury convicted Waters of most of the charges relating to three of the victims and acquitted him of the remaining charges. Furthermore, assuming arguendo that Waters did demonstrate prejudice by joining the offenses for trial, the state has met its burden on rebuttal by showing that the testimony of the multiple victims would have been admissible at separate trials as "other acts evidence."

**{¶45}** Pursuant to Crim.R. 404(B), evidence of a defendant's other bad acts may be admissible to prove the defendant's scheme, plan, system, modus operandi, or pattern of conduct. In the case at hand, all of the alleged victims were minors when the offenses took place. Waters had a personal relationship with, and was in a position of authority over, all of them — three were his stepdaughters and two were his stepdaughters' friends.

All of the sexual assaults occurred in Waters's home, and all of the victims testified about distinct and separate acts that occurred continually over a seven-year span.

{¶46} Upon review, we find that the facts of each offense would be admissible under Crim.R. 404(B) as evidence of modus operandi or pattern of conduct. Accordingly, the court did not abuse its discretion by denying Waters's motion to sever, and his sixth assigned error is overruled.

## Proper Venue

{¶47} In his seventh assigned error, Waters argues that venue in Cuyahoga County was improper for convictions based on conduct that occurred elsewhere. Specifically, Waters argues that two of the victims — K.L. and E.L., who were Waters's stepdaughters at the time — testified that some of the offenses took place while the family was living in Brunswick, which is in Medina County, Ohio, and some of the offenses took place while the family was living in Massachusetts. Waters asserts that these offenses should not be considered as part of a pattern or scheme, because they involved "separate and distinct" conduct and "occurred far apart in time."

{¶48} R.C. 2901.12(H) states that "[w]hen an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred." Furthermore, the following is prima-facie evidence of a course of criminal conduct:

> (1) The offenses involved the same victim, or victims of the same type or from the same group.

(2)   The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.

(3)   The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

(4)   The offenses were committed in furtherance of the same conspiracy.

(5)   The offenses involved the same or a similar modus operandi.

*Id.*

**{¶49}** Upon review, we find that four of the factors that are prima-facie evidence of a course of criminal conduct apply to the case at hand.   First, the offenses that took place in different jurisdictions involve the same three victims — K.L., H.L.,  and E.L.   Second, all three of these victims were Waters's step-daughters at the time the offenses occurred.   Third, Waters committed all of the offenses in furtherance of the same objective — his sexual gratification.   Fourth, all offenses involved the same or similar modus operandi.

**{¶50}** Accordingly, we find that Waters committed the offenses that took place outside of Cuyahoga County as part of his course of criminal conduct.

**{¶51}** Waters next argues that because the out-of-jurisdiction offenses "occurred far apart in time" Cuyahoga County has no jurisdiction over them.   This argument is not well-taken.   For example, Waters argues that there was a one-to-three year gap between the offenses that K.L. testified occurred in Brunswick in 2009 and 2010, and the offenses that K.L. testified occurred in Cuyahoga County in 2011 and 2012.   However, during this time, Waters was sexually abusing E.L. while the family was living in Massachusetts.

**{¶52}** Waters's seventh assigned error is overruled.

## Sufficiency of Evidence
## Sexually Violent Predator Specifications

{¶53} In his eighth assigned error, Waters argues that there was insufficient evidence to convict him of the sexually violent predator specifications. "'Sexually violent predator' means a person who * * * commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." R.C. 2971.01(H)(1). In considering whether a defendant is likely to engage in future sexually violent offenses, the following factors apply to the case at hand: "(a) The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense or a child-victim oriented offense" and "(c) Available information or evidence suggests that the person chronically commits offenses with a sexual motivation." *Id.*

{¶54} Waters argues that "there was no other evidence presented at trial regarding [his] risk of recidivism other than the evidence presented as to the charged offenses." However, Ohio law permits a sexually violent predator specification "to apply to first-time offenders being charged with a sexually violent offense in the same indictment." *State v. Green*, 8th Dist. Cuyahoga No. 96966, 2012-Ohio-1941, ¶ 24.

{¶55} As noted earlier in this opinion, five victims testified that Waters engaged in unlawful sexual conduct with them when they were minors. K.L. testified at length that Waters videotaped and photographed many of the offenses. Additionally, child pornography involving other victims was found on several of Waters's electronic devices. Upon review, we find that this evidence is sufficient to convict Waters of a sexually violent predator specification, and his eighth assigned error is overruled.

## Effective Assistance of Counsel

**{¶56}** To succeed on a claim of ineffective assistance of counsel, a defendant must establish that his or her attorney's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance." *Id.* at 697. *See also State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 3743 (1989).

**{¶57}** For ease of review, we address the ninth and twelfth assigned errors together.

## Victim Impact Testimony

**{¶58}** In his ninth assigned error, Waters argues that he was denied effective assistance of counsel when his attorneys failed "to keep improper victim impact testimony out of the trial."

**{¶59}** "Victim impact evidence is excluded because it is irrelevant and immaterial to the guilt or innocence of the accused; it principally serves to inflame the passion of the jury." *State v. Eisermann*, 8th Dist. Cuyahoga No. 100967, 2015-Ohio-591, ¶ 36. However, evidence that amounts to "a recitation of the facts and circumstances surrounding the offense" is admissible during the guilt phase of a trial. *State v. Fautenberry*, 72 Ohio St.3d 435, 440, 650 N.E.2d 878 (1995). In *Fautenberry,* the court concluded that "evidence which depicts *both* the circumstances surrounding the

commission of the [offense] and also the impact of the [offense] on the victim's family may be admissible during *both* the guilt and the sentencing phases." (Emphasis sic.) *Id.*

{¶60} In the instant case, Waters argues that the following evidence was improperly admitted: K.L. testified that she was "nervous and scared" about coming to court because it was "awkward"; K.L.'s counselor testified that K.L. was "fearful to come to court"; all five victims testified that they were in counseling or therapy regarding the sexual abuse; therapists and counselors testified that each of the five victims were undergoing treatment as a result of Waters abusing them; K.L. testified that, at one point, she was "acting out" because she was "scared and nervous," and because Waters "was on the run at that time"; and S.S. testified that in April 2014, she was hospitalized for a suicide attempt "because of what [Waters] did to me."

{¶61} The state's argument under this assigned error is threefold. First, the state argues that the testimony in question is evidence of the circumstances surrounding the sexual abuse. Second, the state points out that Waters's defense was that the victims, along with Mother, fabricated the allegations against him, and that the counselor's testimony corroborated and added credibility to the victims' testimony. And third, the state argues that even if the "victim impact testimony" was taken out, the evidence of Waters's guilt is overwhelming.

{¶62} Upon review, we find that the court properly admitted the testimony in question, and Waters's counsel was not ineffective for failing to keep this testimony out of trial. Waters's specific examples of prejudicial testimony are mainly based on individual

comments made by certain witnesses, which amount to a mere fraction of the more than 2,500 pages of trial testimony in this case. *See State v. Neil*, 10th Dist. Franklin Nos. 14AP-981 and 15AP-594, 2016-Ohio-4762, ¶ 80 ("Absent the victim impact statement, the jurors would still have been provided with voluminous evidence including descriptions and video or photographic evidence related to each [offense]"). Additionally, the testimony of the therapists and counselors served to show that the victims suffered as a result of Waters's actions, which rebutted Waters's claims that the victims and Mother were conspiring against him.

### Failing to Object

**{¶63}** In his twelfth assigned error, Waters argues that his "counsel was ineffective for failing to object to a prejudicial answer to a jury instruction."

**{¶64}** During deliberations, the jury asked the following question to the court: "Can a fifteen year old consentually [sic.] have sex with a 30-something year old man?" The court went on the record with the prosecutor and defense counsel, outside of the presence of the jury. The court stated that the legal answer to that question is "no"; however, the court and the parties agreed that the question was not relevant to the offenses with which Waters was charged. For example, Waters was charged with multiple counts of rape of a child under the age of 13 under R.C. 2907.02(A)(1)(b). A 15-year-old victim does not trigger a violation of this statute. Waters was also charged with multiple counts of forcible rape. Age is not an element of forcible rape. *See* R.C. 2907.02(A)(2).

**{¶65}** The offense of unlawful sexual conduct with minor, codified in R.C. 2907.04, concerns victims between the ages of 13-15. However, Waters was not charged with this offense. Therefore, per the parties' stipulation, the court answered the jury question as follows: "This question is not relevant based upon the manner within which this defendant is charged."

**{¶66}** Waters's argument that the stipulated answer was not "proper and legally accurate" is incorrect. Accordingly, we find that counsel was not ineffective for failing to object to the court's answer to this jury question, and Waters's twelfth assigned error is overruled.

### Election of Offenses for Sentencing

**{¶67}** In his tenth assigned error, Waters argues that "the government committed reversible error when it elected to have [him] convicted of kidnapping rather than the more specific offense of gross sexual imposition based on the identical conduct."

**{¶68}** There is no question that Waters's convictions for various sex offenses merge with his convictions for each incidental kidnapping. *See* R.C. 2941.25. When two allied offenses merge, "it is the state that determines which offense to pursue at sentencing. * * * At the hearing, the trial court must accept the state's choice among allied offenses, 'merge the crimes into a single conviction for sentencing, * * * and impose a sentence that is appropriate for the merged offense.'" *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 13, (quoting *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 24).

**{¶69}** Waters argues that the state should have elected to pursue the sex offenses, rather than the kidnappings, only when the sex offenses were of a lesser degree and would have resulted in a shorter sentence. Waters's argument is wholly unsupported by case and statutory law. *See, e.g., State v. Goldsmith*, 8th Dist. Cuyahoga No. 95073, 2011-Ohio-840, ¶ 9 ("Indeed, the Ohio Supreme Court has recognized that the state retains the right to elect which allied offense to pursue prior to the trial court's imposition of a sentence").

**{¶70}** Accordingly, Waters's tenth assigned error is overruled.

## Admission of Social Worker Testimony

**{¶71}** In his eleventh assigned error, Waters argues that his right to confront witnesses was violated when the state introduced the testimony of three social workers who "each rendered an opinion regarding the veracity of Jane Does' allegations."

**{¶72}** "A trial judge has wide discretion when determining the admissibility of * * * evidence, and will not be disturbed on appeal absent a clear showing of abuse of discretion." *Renfro v. Black*, 52 Ohio St.3d 27, 32, 556 N.E.2d 150 (1990). However, an expert witness may not testify as to his or her opinion of the truthfulness of a victim's statements. *State v. Boston*, 46 Ohio St.3d 108, 129 545 N.E.2d 1220 (1989).

**{¶73}** In the case at hand, Waters identifies the following testimony of three social workers or counselors as being improperly admitted into trial: that one of the victims presented with and was being treated for "sexual trauma"; that one of the victims was diagnosed with and was being treated for post-traumatic stress disorder; and that one of the

victims was being treated for major depressive disorder and post-traumatic stress disorder as a result of sexual abuse.

**{¶74}** Upon review, we find that nothing about the cited testimony renders an opinion as to the truthfulness of the victims' allegations. In fact, our review of the entirety of the social workers' and counselors' testimony reveals no statements regarding the veracity of the victims' claims of sexual abuse by Waters. Accordingly, we conclude that the court did not abuse its discretion, and Waters's eleventh assigned error is overruled.

### Felony Sentencing
### Life in Prison Without the Possibility of Parole

**{¶75}** In his thirteenth and final assigned error, Waters argues that the court erred by imposing a sentence of life in prison without the possibility of parole for rape of a victim less than 13 years old in violation of R.C. 2907.02(A)(1)(b).

**{¶76}** R.C. 2953.08(G)(2) provides, in part, that when reviewing felony sentences, the appellate court's standard of review is not whether the sentencing court abused its discretion; rather, if this court "clearly and convincingly" finds that (1) "the record does not support the sentencing court's findings under" R.C. Chapter 2929 or that (2) "the sentence is otherwise contrary to law," then we may conclude that the court erred in sentencing. *See also State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231.

**{¶77}** Regarding sentencing an offender for rape of a child under the age of 13, R.C. 2907.02(B) states, in pertinent part, that three factors may enhance the sentence to a

term of life in prison without parole. First, if the offender has been previously convicted of rape in violation of R.C. 2907.02(A)(1)(b); second, "if the offender during or immediately after the commission of the offense caused serious physical harm to the victim"; or third, "if the victim * * * is less than ten years of age * * *."

{¶78} In the case at hand, Waters was convicted of rape in violation of R.C. 2907.02(A)(1)(b) pursuant to count six of the indictment. The jury also found that the victim in count six, K.L., was less than ten years of age when this offense occurred. Waters mistakenly argues that the court imposed a sentence of life without parole for count six because of the sexually violent predator specification. However, our review of the transcript, the jury verdict forms, and the court's journal entries shows that the life without parole sentence was properly imposed for Waters's conviction of rape of a child less than ten years old. Accordingly, this portion of Waters's sentence is supported by the record and is not contrary to law, and his thirteenth and final assigned error is overruled.

{¶79} Convictions and sentence affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON,   JUDGE

EILEEN T. GALLAGHER, P.J., and
ANITA LASTER MAYS, J., CONCUR


## APPENDIX

Assignments of Error

I.      The trial court erred in denying the appellant's motion to suppress because no probable cause existed to believe that Waters had transferred the photo of K.L. from his LG G–Z phone to any computer or data storage device.  The seizure and search of the flash drives and the computer violated the Fourth Amendment.

II.     The trial court erred in denying appellant's motion to suppress because the probable cause to search for the photo of K.L. was two years old and stale.  The seizure and search of the computer and data storage devices violated the Fourth Amendment.

III.    The trial court erred in denying appellant's motion to suppress because the warrants were both overbroad and failed to describe with particularity the electronic data to be searched for.  They violated the Fourth Amendment.

IV.     The trial court erred in not granting Mr. Waters' motion to dismiss for want of a speedy trial.

V.      Mr. Waters was denied a fair trial and a meaningful opportunity to confront his accusers when the trial court denied him access to the grand jury transcripts.

VI.     The trial court denied William Waters a fair trial when it failed to sever three unrelated cases and thereby caused Waters undue prejudice.

VII.    The convictions on counts 4, 5, 6, 7, 8, 9, 10, 11, 43 and 45 are based on insufficient evidence where the government failed to establish venue as the conduct

alleged occurred in the Commonwealth of Massachusetts and/or Medina County, Ohio.

VIII. The evidence at trial is insufficient to sustain the verdict as to the sexually violent predator specifications.

IX. Appellant was denied effective assistance of counsel by counsel's failure to keep improper victim impact testimony out of the trial.

X. The government committed reversible error when it elected to have the appellant convicted of kidnapping rather than the more specific offense of gross sexual imposition based on the identical conduct.

XI. The appellant's right to confrontation of witnesses was violated where the government was permitted to introduce the testimony of the social workers and admitted the records maintained in their roll as social workers.

XII. Trial counsel was ineffective for failing to object to a prejudicial answer to a jury instruction.

XIII. The trial court erred in imposing a sentence of life without parole on count 6 where the appellant was subject to a sentence of 25 years to life.