[Cite as *State v. Whitfield*, 2019-Ohio-982.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 107089

---

### STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

### DARNELL WHITFIELD

DEFENDANT-APPELLANT

---

### JUDGMENT:
VACATED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-620856-A

**BEFORE:** Kilbane, A.J., E.T. Gallagher, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 21, 2019

**ATTORNEYS FOR APPELLANT**

Mark A. Stanton
Cuyahoga County Public Defender
John T. Martin
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By:   Oscar Albores
        Daniel T. Van
Assistant County Prosecutors
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


MARY EILEEN KILBANE, A.J.:

{**¶1**}   Defendant-appellant, Darnell Whitfield ("Whitfield"), appeals his convictions for rape, gross sexual imposition, and kidnapping.   For the reason set forth below, we vacate his no contest pleas and remand for further proceedings consistent with this opinion.

{**¶2**} In August 2017, Whitfield was indicted and charged with two counts of rape,   one count of gross sexual imposition ("GSI") and kidnapping with a sexual motivation specification.[1] The charges stemmed from the DNA testing of a rape kit with an offense date of September 6, 1997.

---

[1]Each of the counts carried firearm and sexually violent predator specifications.

{¶3} In November 2017, Whitfield filed a motion to dismiss for preindictment delay and supplemented the motion in January 2018. The state filed its motion in response, and the trial court held a hearing on the matter.

{¶4} At the hearing, the state alleged the rapes occurred when Whitfield encountered the victim as she exited an RTA bus at East 55th Street and Grand Avenue. Whitfield began walking with and talking to the victim, then picked her up and carried her to his home on Kinsman Avenue. The state alleged that once in the home, Whitfield proceeded to orally and vaginally rape the victim. The victim, T.A., managed to escape from the house, reported the assault to the police, and then went to St. Luke's hospital, where a rape kit was collected.

{¶5} In response, Whitfield claimed the encounter was consensual, and that he was now prejudiced because his grandmother, who passed away in 2016 was present in the house and would have been able to testify that the behavior of he and T.A. suggested a consensual relationship. Whitfield also claimed he was prejudiced by the delay, because RTA surveillance cameras at the bus stop would have depicted the consensual nature of his interaction with T.A., and the videos are no longer available.

{¶6} The trial court overruled Whitfield's motion for failure to prove actual prejudice. The trial court deemed Whitfield's claimed basis as speculative or possible prejudice instead of the required actual or substantial prejudice.

{¶7} In February 2018, the state filed a notice of intent to use other acts evidence of Whitfield's prior convictions in three separate rapes, involving three different victims. The convictions stemmed from evidence of Whitfield's DNA in the rape kits of the three victims. In March 2018, Whitfield filed his brief in opposition to the intended use of this evidence.

{¶8} On the date scheduled for trial, the trial court held a hearing on the state's notice

of intent to use other acts evidence. At the hearing, the state indicated it wished to introduce the evidence to establish a close plan, scheme, or motive. The trial court indicated it would take the matter under advisement, but would not allow the state to introduce the convictions, and would wait to see what and which victims the state intended to use to establish the plan, scheme, or motive. The trial court indicated the evidence of the three other rapes would tend to establish a close pattern. The trial court also indicated that if it allowed the state to introduce any other acts evidence, it would give a curative instruction to the jury not to consider the evidence for character purposes. The trial court then gave a brief recess.

{¶9} After the recess, Whitfield indicated he was prepared to plead no contest to the indictment. The trial court accepted the pleas and found Whitfield guilty on all counts. The trial court merged the GSI and the kidnapping counts into the two rape counts and sentenced Whitfield to 13 years to life on each rape count. The trial court ordered Whitfield to serve them concurrently to each other, but consecutive to sentence for the three other rape convictions.

{¶10} Whitfield now appeals, assigning the following five errors for review.

### Assignment of Error One

The no contest pleas and ensuing findings of guilt must be vacated because [Whitfield] did not understand that he was not a sexually violent predator, nor did he understand the penalties attendant to being a sexually violent predator.

### Assignment of Error Two

The trial court erred when it denied the motion to dismiss for pre-indictment delay on the basis that the defense had not demonstrated prejudice.

### Assignment of Error Three

The trial court erroneously ruled that the prosecution could offer evidence of other rapes committed by [Whitfield].

### Assignment of Error Four

The sentences imposed are contrary to law and must be vacated.

## Assignment of Error Five

Mr. Whitfield received ineffective assistance of counsel.

**{¶11}** For ease of discussion, we will begin with the second assignment of error.

## Preindictment Delay

**{¶12}** In the second assignment of error, Whitfield argues the trial court erred when it denied his motion to dismiss for preindictment delay.

**{¶13}** The statute of limitations for a criminal offense is the defendant's primary protection against overly stale criminal charges. *U.S. v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). However, the Due Process Clause of the Fifth Amendment provides additional protection against prejudice caused by preindictment delay if preindictment delay is (1) unjustifiable and (2) causes actual prejudice. *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 12.

**{¶14}** In *Jones*, the Ohio Supreme Court established a burden-shifting framework for analyzing a due process claim based on preindictment delay. *Id*. at ¶ 13. Under this framework, a defendant is first required to present evidence of actual prejudice. If actual prejudice is established, the burden shifts to the state to produce evidence of a justifiable reason for the delay. *Id*. If the defendant fails to establish actual prejudice, the court is not required to consider the reasons for the delay. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 107.

**{¶15}** In *Jones*, the court also set forth the appropriate standard for evaluating actual prejudice, which involves a "delicate judgment" and a "case-by-case consideration" of the particular circumstances. *Id*. at ¶ 20. In determining whether a defendant has suffered actual

prejudice, "[a] court must 'consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay.'" *Id.*, quoting *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52.   A claim of actual prejudice should be scrutinized "vis-à-vis the particular evidence that was lost or unavailable as a result of the delay" and "the relevance of the lost evidence and its purported effect on the defense."  *Id.* at ¶ 23.

{¶16} "The 'possibility that memories will fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice.'" *Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688,   at ¶ 21, quoting *Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 105.   "Those are 'the real possibilit[ies] of prejudice inherent in any extended delay,' and statutes of limitations sufficiently protect against them."  *Id.*, citing *Marion*, 404 U.S. at 326, 92 S.Ct. 455, 30 L.Ed.2d 468.

{¶17} In his motion to dismiss the indictment, Whitfield argued that he was prejudiced by the delay because his now deceased grandmother and sole witness, who lived with him in the home where the encounter with the victim occurred, would have been able to support his claim that the encounter was consensual.   Whitfield also argued that a surveillance camera in the area where he first encountered the victim would have captured their behavior and supported his claim that the encounter was consensual.

{¶18} Regarding Whitfield's claim of prejudice because of the unavailability of his grandmother, who died in 2016, the state countered that the victim filed a   police report in which she indicated there was no one else present at the time of the assault.   We conclude the victim's statement, given shortly after the incident, seriously impacts Whitfield's claim of prejudice regarding the unavailability of his now deceased grandmother.

{¶19} Further, even if the grandmother was somewhere else in the house and unnoticeable to the victim, we can only speculate about if and what testimony she would be able to give regarding Whitfield's claimed consensual nature of the encounter. "The law requires a defendant to do more than offer mere speculation as to how he [or she] was prejudiced by any delay because requiring less would undermine the statute of limitations." *State v. Clark*, 8th Dist. Cuyahoga No. 103324, 2016-Ohio-4561, quoting *State v. Owens*, 8th Dist. Cuyahoga No. 102276, 2015-Ohio-3881, at ¶ 5.

{¶20} We also conclude Whitfield's claim of prejudice because of the unavailability of surveillance camera footage lends itself to speculation. The state countered that the distance from the RTA station to Whitfield's house was .7 of a mile, therefore, if a camera existed, it would be doubtful what would have been captured bearing on the claimed consensual nature of the encounter. Further, if footage had been captured, it is doubtful, under prevailing retention schedules, that the footage would be kept for more than 60 days.

{¶21} Based on the speculative nature of Whitfield's claims, the trial court did not err in denying the motion to dismiss for preindictment delay.

{¶22} Accordingly, we overrule the second assignment of error.

No Contest Plea

{¶23} In the first assignment of error, Whitfield argues his no contest pleas must be vacated because he could not have knowingly, intelligently, or voluntarily entered the pleas. Specifically, he argues the trial court incorrectly advised him that he was a sexually violent predator, overstated the maximum penalty, and failed to advise him of postrelease control.

{¶24} Crim.R. 11(C)(2)(a) provides in pertinent part that the court shall not accept a plea of guilty or no contest without first addressing the defendant personally and * * * [d]etermining

that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved[.]

{¶25} The requirements of Crim.R. 11(C)(2)(a) are nonconstitutional, and thus, this court reviews "to ensure substantial compliance" with this rule. *State v. Maddox*, 8th Dist. Cuyahoga Nos. 106505 and 106506, 2018-Ohio-3056, citing *State v. Esner*, 8th Dist. Cuyahoga No. 90740, 2008-Ohio-6654, ¶ 4. "Under this standard, a slight deviation from the text of the rule is permissible; so long as the totality of the circumstances indicates that 'the defendant subjectively understands the implications of his plea and the rights he is waiving.'" *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 31, quoting *State v. Nero*, 56 Ohio St.3d 106, 564 N.E.2d 474 (1990).

{¶26} When the trial court does not "substantially comply" with Crim.R. 11(C)(2)(a), a reviewing court must then "determine whether the trial court partially complied or failed to comply with this rule." *Clark,* 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, at ¶ 32. "If the trial judge partially complied, e.g., by mentioning mandatory postrelease control without explaining it, the plea may be vacated only if the defendant demonstrates a prejudicial effect." *Id.*, citing *Nero*. As repeatedly recognized by the Ohio Supreme Court, "a defendant must show prejudice before a plea will be vacated for a trial court's error involving Crim.R. 11(C) procedure when nonconstitutional aspects of the colloquy are at issue." *Maddox* at ¶ 11, citing *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 17. "The test for prejudicial effect is 'whether the plea would have otherwise been made.'" *Clark* at ¶ 32, quoting *Nero*.

{¶27} Whitfield argues his no contest pleas must be vacated because the trial court's advisement that he was a sexually violent predator was fundamentally flawed. Specifically,

Whitfield argues he could not be a sexually violent predator, as the trial court determined, because he was a first offender.

{¶28} At the time of the charged offense leading to the instant appeal, R.C. 2971.01(H)(1) stated, "'Sexually violent predator' means a person who has been convicted of or pleaded guilty to committing, on or after [January 1, 1997], a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses."

{¶29} On March 7, 2017, prior to his no contest pleas in the instant matter, Whitfield had been found guilty, in another courtroom, of three other rapes, involving three different victims and all involving the use of a firearm. All three rapes were committed after January 1, 1997. Because of the above three prior convictions, Whitfield fit squarely into the statute as written. Thus, based on the foregoing, we reject Whitfield's contention that he was a first time offender and that the sexually violent predator specification was inapplicable.

{¶30} Whitfield, relying on the Ohio Supreme Court's decision in *State v. Smith*, 104 Ohio St.3d 106, 2004-Ohio-6238, 818 N.E.2d 283, which held that a "[c]onviction of a sexually violent offense cannot support the specification that the offender is a sexually violent predator as defined in R.C. 2971.01(H)(1) if the conduct leading to the conviction and the sexually violent predator specification are charged in the same indictment," argues that having not been previously convicted of a violent sex offense, he should not have been subjected to sexually violent predator specification.

{¶31} However, we have determined above, that by virtue of his aforementioned three separate rape convictions, Whitfield was not a first time offender as he contends. As a result, Whitfield's reliance on *Smith* is misplaced.

**{¶32}** Nonetheless, after the *Smith* decision, the General Assembly amended or clarified the statute to its current version. R.C. 2971.01(H)(1) now defines "sexually violent predator" as "a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses."

**{¶33}** Subsequently, we interpreted the General Assembly's purpose in revising R.C. 2971.01(H)(1) to allow for the inclusion of a sexually violent predator specification in the indictment of one being charged for the first time with a sexually violent offense. *State v. Stansell*, 8th Dist. Cuyahoga No. 100604, 2014-Ohio-1633, citing *State v. Green*, 8th Dist. Cuyahoga No. 96966, 2012-Ohio-1941, ¶ 25.

**{¶34}** Thus, despite Whitfield's misplaced contention that he is a first time offender, since the General Assembly's amendment, we have repeatedly rejected this argument and held that the sexually violent predator statute does not require a defendant to have a prior conviction for a sexually oriented offense to be found guilty of a sexually violent predator specification. *State v. A.M.*, 8th Dist. Cuyahoga No. 106400, 2018-Ohio-4209, *State v. Mitchell*, 8th Dist. Cuyahoga No. 94287, 2010-Ohio-5775, ¶ 26. *See also State v. Waters*, 8th Dist. Cuyahoga No.103932, 2017-Ohio-650; *State v. Taylor*, 8th Dist. Cuyahoga No. 100315, 2014-Ohio-3134.

**{¶35}** Thus, based on the foregoing, we reject Whitfield's contention that the trial court's advisement regarding the sexually violent predator specification was fundamentally flawed. Under either versions of the statute, the sexually violent predator specification applied. The trial court correctly advised Whitfield that the sexually violent predator specification applied. Thus, Whitfield's pleas cannot be invalidated on this basis.

**{¶36}** Whitfield argues the trial court overstated the penalty by advising him he was subject to 20 years to life in prison on the rape counts, rendering his plea invalid.

**{¶37}** At the hearing, the trial court stated:

[COURT]: The penalty with the sexually-violent predator for this particular case is found in Section 2971.03(A)(d)(ii), which says that if Count 1, in this case a rape, was committed prior to January 2, 2007, which is the case here, then the Court shall impose an indefinite prison term consisting of a minimum term fixed by the court that is not less than ten years and a maximum term of life in prison. So that is added onto the underlying charge in Count 1, which is rape itself.

**{¶38}** However, R.C. 2971.03, in effect in 1997, provided:

(A) * * * [T]he court shall impose a sentence upon a person who is convicted of or pleads guilty to a sexually violent offense and who also is convicted of or pleads guilty to a sexually violent predator specification that was included in the indictment, or information charging that offense as follows:

* * *

(3) Except as provided in division (A)(4) of this section, if the offense is an offense other than aggravated murder, murder, or an offense for which a term of life imprisonment may be imposed, it shall impose an indefinite prison term consisting of a minimum term fixed by the court from among the range of terms available as a definite term for the offense, but no less than two years, and a maximum term of life imprisonment.

**{¶39}** Here, it is clear that the trial court, while attempting to advise Whitfield of the potential penalties he was facing, explained and subsequently applied the incorrect version of the statute. Under the statute in effect in 1997, the minimum sentence was three years, but the trial court advised Whitfield the minimum sentence was ten years.

**{¶40}** Under the Ex Post Facto Clause found in Section 10, Article I of the United States Constitution, "[e]very law that changes the punishment, and inflicts greater punishment, than the law annexed to the crime, when committed" is barred. *State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534, ¶ 50, quoting *Calder v. Bull*, 3 U.S. 386, 390, 1 L.Ed. 648 (1798).

**{¶41}** Applying ex post facto to the instant case, Whitfield could not be subject to a greater sentence than was applicable to the offense when committed. Because the trial court provided inaccurate information regarding the potential penalties Whitfield faced, the trial court was not in substantial compliance with Crim.R. 11.

**{¶42}** However, because the trial court partially complied, Whitfield must demonstrate a prejudicial effect. Here, the trial court imposed a prison sentence of 10 years to life and this sentence was to be served consecutively to the 24 years imposed in another courtroom for the previously mentioned three separate rapes involving three different victims. In addition, Whitfield would still face a sentencing range with an upper limit of life in prison, if the trial court had correctly stated the penalty. Under these circumstances Whitfield cannot demonstrate any prejudicial effect.

**{¶43}** As a result, Whitfield's plea cannot be invalidated solely on the basis that the trial court incorrectly advised him of a greater sentence than was applicable to the offense when committed.

**{¶44}** Within this assignment of error, Whitfield argues he was not advised of postrelease control.

**{¶45}** The transcript reflects that, at the time of the plea, the trial court neglected to advise Whitfield of mandatory postrelease control. At the sentencing hearing, in reference to postrelease control, the trial court stated "With a lifetime tail [p]ost-[r]elease [c]ontrol is not an issue. All of that goes before the Parole Board for determination as to when and under what circumstances Mr. Whitfield may be released."

**{¶46}** At sentencing, Whitfield was sentenced on charges that originated prior to the effective date of Am.Sub.S.B. No. 2 ("Senate Bill 2") Postrelease control was enacted as part of

Senate Bill 2, applying to crimes committed after July 1, 1996. "[P]ostrelease control does not apply to pre-Am.Sub.S.B. No. 2 sentences for crimes committed on or before July 1, 1996 as postrelease control did not exist prior to July 1, 1996." *State v. Gavin*, 8th Dist. Cuyahoga No. 90017, 2008-Ohio-2042, ¶ 11.

{¶47} Because Whitfield was sentenced on offenses committed after the effective date of Senate Bill 2, he is subject to postrelease control. In addition, the fact that some of the offenses carry a life-tail does not negate the trial court's duty to impose postrelease control. *See* R.C. 2967.28; *Stansell*, 8th Dist. Cuyahoga No. 100604, 2014-Ohio-1633, citing *State ex rel. Carnail v. McCormick*, 126 Ohio St.3d 124, 2010-Ohio-2671, 931 N.E.2d 110, ¶ 27 (rape convictions require postrelease control as part of the sentence, postrelease control applies to indefinite or life sentences, and R.C. 2967.28(F) does not alter this requirement).

{¶48} Having made no mention of postrelease control at the plea hearing, the trial court's passing reference above to postrelease control represents a complete failure to comply with Crim.R. 11. "If the trial court completely failed to comply, the plea must be vacated, and a showing of prejudice is not required." *State v. Clifton*, 8th Dist. Cuyahoga No. 105220, 2018-Ohio-269, citing *Clark,* 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462*,* at ¶ 32, quoting *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224 ("A complete failure to comply with the rule does not implicate an analysis of prejudice.").

{¶49} As a result of the trial court's complete failure to properly advise and impose upon Whitfield the requisite period of postrelease control, his pleas must be vacated.

{¶50} Accordingly, the first assignment of error is sustained and Whitfield's pleas are vacated.

**{¶51}** Our disposition of the first and second assignments of error, render the remaining assignments of error moot. App.R. 12(A)(1)(c).

**{¶52}** Judgment is vacated and the matter is remanded to the trial court for further proceedings.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

EILEEN T. GALLAGHER, J., and
SEAN C. GALLAGHER, J., CONCUR